Connor Lynch (SBN 301538)
connor@lynchllp.com
Brian Lynch (SBN 292511)
brian@lynchllp.com
LYNCH LLP
4470 W. Sunset Blvd. No. 90096
Los Angeles, CA 90027
Phone: (949) 229-3141

Attorneys for Plaintiff Pretty in Plastic, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pretty in Plastic, Inc.,<br><br>  Plaintiff,<br>      v.<br><br>Maryellis Bunn,<br>1AND8 Inc., dba Museum of Ice Cream<br><br>  Defendants. | Civil Action No. 2:18-cv-6091<br><br>Complaint for Copyright Infringement, Breach of Contract, Unjust Enrichment, and Unfair Competition<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

1. Plaintiff, by and through its attorneys of record, alleges as follows:

**Factual Allegations**

2. Plaintiff Pretty in Plastic, Inc. ("Pretty in Plastic" or "PIP") was founded by Julie B. in Los Angeles in 2006 on one core principle: to collaborate with established and emerging artists to bring visions to life in the form of sculptural artwork, through creative, conscious, and innovative design.

3. Since 2006, the company has become one of the foremost production and fabrication studios for installations, pop art projects, fine art fabrication, multiples, and designer toys. The company employs and collaborates with the best creatives in the industry to deliver exceptional work for its clients on every project.

4. Through her work as an artist and founder of Pretty in Plastic, Julie B. has been featured in LA Weekly, Juxtapoz, Design Bureau, Reading Rainbow, NPR's Morning Edition, and was co-curator for "The Art of Toys" exhibit at the Lancaster Museum of Art and History.

5. Art is not just a passion for Julie B. and Pretty in Plastic—it's a living. Without customers and clients who pay Pretty in Plastic to create art, who use only the art they pay for, who engage in good faith and pay to harness Pretty in Plastic's creative talent—without them, Pretty in Plastic could not exist.

6. This case is about a client that solicited PIP's copyrighted designs under a non-disclosure agreement, never paid for the right to use the designs, and then used the designs anyway to make millions of dollars. Pretty in Plastic is seeking to recover these ill-gotten gains.

**The Parties**

7. Plaintiff Pretty in Plastic, Inc. is a California corporation

8. Defendant Maryellis Bunn is a co-founder and creative director of the Museum of Ice Cream, whose first location opened in New York in summer 2016. She resides in California.

9. Defendant 1AND8, Inc. ("Museum of Ice Cream" or "MOIC") is a Delaware corporation that owns and operates the Museum of Ice Cream. MOIC's principal place of business is the City of Los Angeles, California.

10. Each MOIC location is a "pop-up" business in a repurposed building that features ice cream themed rooms through which groups of customers walk. The rooms feature artistic exhibits and immersive experiences, bright playful colors, and the locations are intended to remind visitors of ice cream and evoke feelings of nostalgia.

**The Museum of Ice Cream Solicited, Under NDA, Confidential Design Proposals**

11. The Museum of Ice Cream first contacted PIP about creating a room installation for MOIC's Los Angeles Spring 2017 exhibition in September 2016.

12. After some logistical back-and-forth, on October 24, 2016, Defendant Maryellis Bunn personally asked PIP to bid on one item and four rooms, including a "Rainbow sherbet room."

13. In response to this request, PIP prepared several design proposals, including for a "Rainbow sherbet room."

14. Before PIP was willing to share its design proposals with Defendants, PIP asked on November 3, 2016 that Defendants (through Defendant Maryellis Bunn) sign a Non-Disclosure Agreement ("NDA"), which Ms. Bunn signed that same day.

15. Among other things, the NDA requires the recipient of materials to use at least reasonable means "to prevent the disclosure and protect the confidentiality of information, whether oral or written," and the NDA permitted MOIC's use of Confidential Information "only in connection with" the assessment of "future associations with the Disclosing Party".

16. Later that day and in response to receipt of Defendant Maryellis Bunn's signature on the NDA, PIP sent Defendant MOIC concepts and designs for each of the four rooms, each

marked with the following note: "Note: All concepts + designs are property of Pretty in Plastic. All rights reserved and cannot be reproduced without written permission."

17. In these concepts and designs, sent to Defendants on condition of confidentiality, a now-iconic solid-white unicorn with a long, gold horn (the "PIP Rainbow Room Unicorn") first appeared in the design—Pretty in Plastic's design—for the Rainbow Sherbet Room:



18. Shortly after Defendants received the design proposals for PIP to build a room for MOIC's Spring 2017 Los Angeles exhibition, discussions over an agreement with PIP fizzled, and no agreement was ever reached for MOIC to use PIP's design proposals.

**Despite Never Reaching an Agreement to Use PIP's Designs, MOIC Used Them Anyway**

19. In October 2017, just under a year after PIP provided its confidential and copyrighted designs to Defendants, PIP received a newsletter that prominently highlighted the "Rainbow Room" at MOIC's San Francisco exhibition—complete with a solid-white unicorn with a long, gold horn nearly identical to the solid-white unicorn with a long, gold horn in PIP's confidential and copyrighted design for the rainbow sherbet room.

20.     Below is an image of the PIP Rainbow Room Unicorn as it appears on the MOIC website:



21.     On October 11, 2017, PIP wrote to Defendants MOIC and Maryellis Bunn, offering MOIC the opportunity to respond and explain why PIP's designs appeared in MOIC's work:

> We are confused as to how this could have happened as there was clearly a notice of concept ownership on the bottom of the proposals.
>
> Explain.

22.     Defendants never responded.

23.     On June 18, 2018, PIP—this time, through counsel—again wrote to Defendants MOIC and Maryellis Bunn, outlining largely the same facts and circumstances described in this complaint, and requesting a response by July 6, 2018. In response, Defendants did not contend that they did not copy PIP's design; instead, Defendants contended, in substance, that they were legally entitled to copy and exploit PIP's design.

24.     Compounding matters, Defendant Maryellis Bunn has publicly—and wrongly—claimed credit for the design of the San Francisco Rainbow Room, including its unicorns. In an October 24, 2017 Instagram post, for example, MOIC states:

> When designing MOIC, our Co-Founder, Maryellis Bunn, wanted to create a space that commemorated the city's beautiful message of cohesion and inclusivity. MOIC SF's RAINBOW room, uses the symbolism of unicorns & rainbows as a tribute to San Francisco's history of acceptance.

25. This wrongly implies that Defendant Bunn—and not PIP—was the creative force responsible for the solid-white unicorn with a long, gold horn in a rainbow room.

26. And in an interview with *Coveteur* for a December 2017 article, Defendant Bunn described "her" design process (emphasis added below):

> My design process is holistic. I think about the experience as a whole [and] really think about the flow. The process is different for each place. For San Francisco specifically, we demoed for like two and a half/three weeks.
> I spend time [in the city], really immersing myself in the culture, understanding the people and the lifestyle, and then I'm able to take that and respond to it. **All of the installs are my reaction to what's going on.** The same goes for San Francisco, there were more literal attributes; the rainbow room was a direct response of the [pride] celebration San Francisco has, the beauty of that, and inclusivity.

27. In fact, though, not all of the installs were "[her] reaction to what's going on." The Rainbow Room, which Defendant Bunn claims "was a direct response [to] the [pride] celebration San Francisco has," was actually copied from PIP's copyrighted design concepts, which she had solicited and received only on condition of nondisclosure. Defendant Bunn is personally responsible because, as she has declared under penalty of perjury, she "personally designed or supervised the creation of each signature room."

28. MOIC's public representations of the unicorns' origin have not always been consistent, either. While MOIC now calls PIP Rainbow Room unicorn "Harvey" (for Harvey Milk, a San Francisco icon now recognized as a symbol of LGBTQ+ rights), an earlier MOIC Instagram post referred to the unicorn as "Grant" (presumably for MOIC's location on Grant Avenue, which was in turn named for President Ulysses S. Grant).

29.     These illustrative examples may not be an exhaustive list of every time Defendants MOIC and Bunn have stolen others' work, but they do demonstrate the point here: PIP created the solid-white unicorn with a long, gold horn for a Rainbow Sherbet room and provided it to Defendants on condition that Defendants not disclose it or use it. Defendants breached that agreement, committed copyright infringement, and took credit for PIP's work.

### MOIC Has Made Millions of Dollars Using PIP's Work

30.     According to Defendant MOIC, it is "extremely lucrative." Hundreds of thousands of tickets to the MOIC have been sold in hours, and the MOIC has received nationwide public recognition. Defendant Bunn has declared, under penalty of perjury, that each MOIC location anticipates at least $10 million of ticket sales.

31.     The PIP Rainbow Room Unicorn is a significant factor in the success of MOIC's San Francisco location. As MOIC itself recognizes, the PIP Rainbow Room Unicorn is a "HUGE hit[]." May 21, 2018 MOIC Instagram post.

32.     The PIP Rainbow Room Unicorn has been featured in print magazines and other media, including at least 22 separate MOIC Instagram posts since September 2017, to promote both Defendant Bunn personally and Defendant MOIC. *See* Jodi Taylor, *How the Museum of Ice Cream Became One of the Most Instagrammed Spaces in the Country*, The Coveteur (December 8, 2017), http://coveteur.com/2017/12/08/maryellis-bunn-museum-ice-cream-founder/; Anna Wiener, *The Millennial Walt Disney*, New York Magazine (October 4, 2017), http://nymag.com/selectall/2017/10/museum-of-ice-cream-maryellis-bunn.html.

33.     On MOIC's website, museumoficecream.com, the PIP Rainbow Room Unicorn is featured prominently as the icon of the San Francisco MOIC location:



34.     According to Defendant Bunn's public interviews and other publicly available information, MOIC earns money from these rooms and installations in at least the following ways: (1) ticket sales, (2) ice cream sales, (3) gift shop sales, (4) corporate events, and (5) brand partnerships. Public estimates of ticket sales show MOIC has wrongfully collected millions of dollars using PIP's work.

**Jurisdiction and Venue**

35.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, et seq.

36.     The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. § 1331 and 1338(a).  This Court also has supplemental jurisdiction over Plaintiff's claims arising under state law under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

37.     This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, and acts of infringement complained of herein occurred in the State of California and in this judicial district.

38. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and each Defendant either resides in this district or has substantial and continuous ties to this district.

**First Claim for Relief**
**Copyright Infringement – 17 U.S.C. §§ 106, *et seq.***
**(Direct, Contributory, Vicarious)**
**(Against All Defendants)**

39. Pretty in Plastic re-alleges the allegations in Paragraphs 1 through 38.

40. Pretty in Plastic is the sole owner of the copyright in an original work that is fixed in tangible media of expression. On June 18, 2018, the United States Copyright Office accepted an application for copyright registration for the original work, Pretty in Plastic Rainbow Sherbet Room Design Proposal. It has been assigned case number 1-6689555661 by the Copyright Office.

41. Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed PIP's protected work or derivatives of PIP's protected work without PIP's consent. Defendants' acts violate PIP's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including PIP's exclusive rights to produce, reproduce, and distribute copies of her work, to create derivative works, and to publicly display her work.

42. Defendants' infringement has been undertaken knowingly, and with intent to financially gain from PIP's protected copyrighted work. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement, and they did so with intent to further their financial interest in the infringement of Pretty in Plastic Rainbow Sherbet Room Design Proposal. Accordingly, Defendants have directly, contributorily, and vicariously infringed PIP's copyrighted work.

43. Because of Defendants' infringing acts, PIP is entitled to actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act.

44. Defendants' infringement has caused and is causing irreparable harm to PIP, for which she has no adequate remedy at law. Unless this Court restrains Defendants from infringing PIP's protected work, the harm will continue to occur in the future. Accordingly, PIP is entitled to preliminary and permanent injunction.

**Second Claim for Relief**
**Breach of Contract**
**(Against All Defendants)**

45. Pretty in Plastic re-alleges the allegations in Paragraphs 1 through 44.

46. Defendants entered into a contract titled "NON-DISCLOSURE AGREEMENT" with Pretty in Plastic on or about November 3, 2016.

47. The contract required Defendants to maintain confidentiality of design proposals provided to them that same day.

48. Pretty in Plastic has performed its obligations under the contract.

49. Defendants have breached the contract by, for example, using the designs proposals in a public exhibition at the San Francisco Museum of Ice Cream location.

50. Pretty in Plastic is entitled to an injunction restraining Defendants from continuing breach of the non-disclosure agreement because there is no adequate legal remedy.

51. Pretty in Plastic is also entitled to Defendants' profits attributable to Defendants' wrongful use of the design proposals, in an amount to be proved at trial.

**Third Claim for Relief**
**Unjust Enrichment**
**(Against All Defendants)**

52. Pretty in Plastic re-alleges the allegations in Paragraphs 1 through 51.

53. At the request of Defendants, Pretty in Plastic and its representatives provided design proposals described in this complaint to Defendants with the expectation that Defendants would not disclose or exploit the fruit of Pretty in Plastic's labor, and that Defendants would use the design proposals solely to evaluate a future agreement with Pretty in Plastic.

54. It would be unjust for Defendants to retain the benefits and profits flowing from Defendants' wrongful use of the design proposals.

55. Pretty in Plastic is entitled to restitution, including Defendants' profits attributable to Defendants' wrongful use of the design proposals, in an amount to be proved at trial.

**Fourth Claim for Relief**
**Unfair Competition**
***Cal. Bus. & Prof. Code* §§ 17200, *et seq.* and common law**
**(Against All Defendants)**

56. Pretty in Plastic re-alleges the allegations in Paragraphs 1 through 55.

57. Section 17200 of the *California Business and Professions Code* prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

58. By engaging in the alleged conduct, Defendants have engaged in unlawful, unfair, or fraudulent business acts of unfair competition in violation of Sections 17200, *et seq.*, and California common law. This conduct includes Defendants' unauthorized use of PIP's copyrighted work.

59. As an actual and proximate result of Defendants' unfair competition, Defendants have unjustly enriched themselves by, among other things, obtaining profits, depriving Pretty in Plastic of compensation to which it is rightly entitled, and taking credit for Pretty in Plastic's original work. Pretty in Plastic is thus entitled to restitution of such sums in an amount to be proved at trial.

**PRAYER FOR RELIEF**

Plaintiff Pretty in Plastic prays for judgment in its favor against Defendants, and each Defendant, as follows:

A) That Defendants' products and materials that infringe PIP's copyright, as well as any other articles that contain or embody copies of PIP's original work, be impounded pursuant to 17 U.S.C. §. 503(a);

B) That Defendants' products and materials that infringe PIP's copyright, as well as any other articles that contain or embody copies of PIP's original work, be destroyed pursuant to 17 U.S.C. §. 503(b);

C) That Defendants be required to provide a full accounting to PIP for all profits derived from their use of the Pretty in Plastic Rainbow Sherbet Room Design Proposal and their production, reproduction, and preparation of derivative works based on, distribution, and display of such unauthorized works in all media, from all sources, worldwide;

D) That Defendants be ordered to pay PIP all damages, including future damages, that PIP has sustained or will sustain as a result of the acts complained of herein, and that PIP be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting;

E) That Defendants be ordered to pay to PIP punitive damages as a result of Defendants' deliberate and willful misconduct;

F) That Defendants be ordered to pay to PIP pre-judgment and post-judgment interest on all applicable damages;

G) That Defendants be permanently enjoined from all further infringement of the Pretty in Plastic Rainbow Sherbet Room Design Proposal; and

H) Such other or further relief as the Court may deem proper.

DATED: July 13, 2018                    LYNCH LLP

                                        By     /s/ Connor Lynch
                                           Connor Lynch
                                           *Attorneys for Plaintiff*
                                           *Pretty in Plastic, Inc.*

**DEMAND FOR JURY TRIAL**

Plaintiff Pretty in Plastic, Inc. hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

DATED: July 13, 2018                    LYNCH LLP

By    /s/ Connor Lynch
      Connor Lynch
      *Attorneys for Plaintiff*
      *Pretty in Plastic, Inc.*