SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CARLO F. VAN DEN BOSCH, Cal. Bar No. 185207
cvandenbosch@sheppardmullin.com
GAZAL POUR-MOEZZI, Cal. Bar No. 285932
gpour-moezzi@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:  714.513.5130

Attorneys for Defendants
MARYELLIS BUNN, and
1AND8 INC., dba MUSEUM OF ICE
CREAM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PRETTY IN PLASTIC, INC., a California corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>MARYELLIS BUNN, an individual; and1AND8 INC., a Delaware corporation dba MUSEUM OF ICE CREAM,<br><br>        Defendants. | Case No. 2:18-cv-06091-GW (SKx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:    November 8, 2018<br>Time:   8:30 a.m.<br>Crtrm.: 9D<br><br>The Hon. George H. Wu |

SMRH:487953219.3

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 8, 2018, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu, U.S. District Judge of the Central District of California, in Courtroom 9D of the United States Courthouse, 350 West 1st Street, Los Angeles, California, defendants Maryellis Bunn and 1AND8, Inc. dba Museum of Ice Cream ("MOIC") (collectively, "Defendants") will and hereby do move the Court for an order dismissing with prejudice the claims brought by plaintiff Pretty in Plastic, Inc. ("Plaintiff") for: (1) copyright infringement; (2) breach of contract; (3) unjust enrichment; and (4) unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* and California common law.  [Docket No. 1.]  Each of these claims fails to state a claim upon which relief may be granted and therefore should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Should the Court deny the outright dismissal of Plaintiff's claims, Plaintiff's claims are subject to dismissal as to Ms. Bunn, as Plaintiff has failed to allege sufficient facts against Ms. Bunn in her personal capacity.

The parties met and conferred regarding the substance of this motion as required by Local Civil Rule 7-3, including by participating in a telephonic conference on September 14, 2018, during which the parties discussed Plaintiff's claims and the applicable law.  Notwithstanding those discussions, Plaintiff declined to withdraw or amend its claims.  (*See* Declaration of Gazal Pour-Moezzi in Support of Motion to Dismiss Complaint, ¶ 3.)

This Motion is based on this Notice and the Memorandum of Points and Authorities provided below, the Declaration of Gazal J. Pour-Moezzi in Support of Motion to Dismiss Complaint, Request for Judicial Notice in Support of Motion to Dismiss Complaint, the pleadings and papers on file, and any other matters as the Court may consider.

1  Dated:  October 9, 2018

2                          SHEPPARD, MULLIN, RICHTER & HAMPTON
3                          LLP

4                          By        /s/ Carlo F. Van den Bosch
5                                   CARLO F. VAN DEN BOSCH
                                    GAZAL POUR-MOEZZI
6                                   Attorneys for Defendants
7                                   MARYELLIS BUNN
                                    1AND8 INC., dba MUSEUM OF ICE
8                                   CREAM

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND ........................................................... 2

    A.  The Parties And Their Prior Association .................................. 2

    B.  MOIC Opens A Location In San Francisco ............................. 4

    C.  Plaintiff Sues Defendants Because The MOIC Rainbow Room Includes A Unicorn ........................................................... 5

III.  THE ENTIRE COMPLAINT SHOULD BE DISMISSED ............................. 6

    A.  Legal Standard Applicable To Motion To Dismiss ................. 6

    B.  Plaintiff Fails To State A Claim For Copyright Infringement ............... 6

        1.  The Works Are Not Substantially Similar As A Matter Of Law ........................................................ 8

            a.  Numerous Components Of Plaintiff's Work Are Unprotectable ................................................. 8

            b.  The Protectable Elements Of Plaintiff's Unicorn Are Strikingly Different From MOIC's Unicorn ............ 12

    C.  Plaintiff's Claims For Unjust Enrichment And Unfair Competition Are Preempted By The Copyright Act ............. 18

        1.  Plaintiff's Work Falls Within The Subject Matter Of Copyright ........................................................ 19

        2.  Plaintiff's Claims Are Equivalent To The Copyright Act .......... 20

    D.  Plaintiff Fails To State A Claim For Breach Of Contract ................... 21

    E.  Maryellis Bunn Should Be Dismissed From This Action .................... 23

        1.  The Breach Of Contract Claim Must Be Dismissed Against Ms. Bunn ................................................. 23

        2.  The Copyright Infringement, Unjust Enrichment, and Unfair Competition Claims Must Be Dismissed Against Ms. Bunn ....................................................... 24

IV.  CONCLUSION ........................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*A Star Group, Inc. v. Manitoba Hydro*
   2014 WL 2933155 (S.D.N.Y. June 30, 2014)........................................................22

*Alchemy II, Inc. v. Yes! Entm't Corp.*
   844 F. Supp. 560 (C.D. Cal. 1994)...........................................................9, 11, 12

*Aliotti v. R. Dakin & Co.*
   831 F.2d 898 (9th Cir. 1987) ....................................................................9

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) ...................................................................12

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ..........................................................................6, 18

*Aurora World, Inc. v. Ty Inc.*
   719 F. Supp 2d 1115 (C.D. Cal. 2009).........................................................9, 12

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ............................................................................6

*Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, LLC*
   355 Fed. App'x 516 (2d Cir. 2009) .............................................................22

*Buckley v. Cracchiolo*
   2014 WL 545751 (C.D. Cal. 2014) ............................................................24

*Cavalier v. Random House, Inc.*
   297 F.3d 815 (9th Cir. 2002) ...................................................................12

*Christianson v. West Publishing Co.*
   149 F.2d 202 (9th Cir. 1945)......................................................................7

*Conference Archives, Inc. v. Sound Images, Inc.*
   2010 WL 1626072 (W.D. Pa. Mar. 31, 2010)...................................................23

*Croak v. Saatchi & Saatchi N. Am., Inc.*
   174 F. Supp. 3d 829 (S.D.N.Y. 2016) ....................................................15, 16, 18

*Daniels-Hall v. Nat'l Educ. Ass'n.*
   629 F.3d 992 (9th Cir. 2010) ................................................................. 6

*Deckers Outdoor Corporation v. Fortune Dynamic, Inc.*
   2015 WL 12731929 (C.D. Cal. 2015) ............................................... 24, 25

*Del Madera Props. v. Rhodes & Gardner, Inc.*
   820 F.2d 973 (9th Cir. 1987) ......................................................... 19, 21

*Design Associates, Inc. v. Welch*
   224 Cal. App. 2d 165 (1964) ................................................................ 24

*Dielsi v. Falk*
   916 F. Supp. 985 (C.D. Cal. 1996) ....................................................... 19

*Downing v. Abercrombie & Fitch*
   265 F.3d 994 (9th Cir. 2001) ................................................................ 18

*Eng v. Captain Blue Hen Comics*
   2014 WL 2941280 (E.D.N.Y. June 30, 2014) .................................. 16, 17

*Epikhin v. Game Insight N. Am.*
   2015 U.S. Dist. LEXIS 66188 (N.D. Cal. May 20, 2015) ...................... 6

*Erickson v. Blake*
   839 F. Supp. 2d 1132 (D. Or. 2012) ...................................................... 8

*Firoozye v. Earthlink Network*
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ........................................... 19, 21

*Folkens v. Wyland Worldwide, LLC*
   882 F.3d 768 (9th Cir. 2018) .................................................................. 9

*Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*
   2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) .................................... 22

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*
   462 F.3d 1072 (9th Cir. 2006) ................................................................ 6

*Gallagher v. Lions Gate Entm't*
   2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) .............................. 7, 18

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*
   446 F.2d 738 (9th Cir. 1971) ................................................................. 9

*Kodadek v. MTV Networks, Inc.*
    152 F.3d 1209 (9th Cir. 1998) ........................................................................ 19, 20

*Kumar, Inc. v. Kudlow*
    413 Fed. Appx. 981 (9th Cir. 2011) ............................................................. 23, 24

*Laws v. Sony Music Entm't*
    448 F.3d 1134 (9th Cir. 2006) ............................................................................ 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) ......................................................................... 6, 23

*Mattel, Inc. v. MGA Entm't, Inc.*
    616 F.3d 904 (9th Cir. 2010) ............................................................................ 7, 9

*Motown Record Corp. v. George Hormel & Co.*
    657 F. Supp. 1236 (C.D. Cal. 1987) .................................................................... 20

*Muromura v. Rubin Postaer and Associates*
    2014 WL 4627099 (C.D. Cal. Sept. 16, 2014) ............................................... 8, 10

*Pasillas v. McDonald's Corp.*
    927 F.2d 440 (9th Cir. 1991) ........................................................................... 9, 12

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ............................................................... 20

*Phillips v. P.F. Chang's China Bistro, Inc.*
    2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) ....................................................... 10

*Reece v. Island Treasures Art Gallery, Inc.*
    468 F. Supp. 2d 1197 (D. Haw. 2006) ................................................................. 17

*Rentmeester v. Nike, Inc.*
    883 F.3d 1111 (9th Cir. 2018) ................................................................... 7, 14, 15

*Rice v. Fox Broadcasting Co.*
    330 F.2d 1170 (9th Cir. 2003) ............................................................................ 12

*Satava v. Lowry*
    323 F.3d 805 (9th Cir. 2003) ........................................................................... 8, 11

*Sexy Hair Concepts, LLC v. Conair Corp.*
    2013 WL 12119721 (C.D. Cal. Feb. 25, 2013) ................................................... 10

-iv-

*Singh v. Ashcroft*
    393 F.3d 903 (9th Cir. 2004) ............................................................................. 11

*Sportsmans Warehouse, Inc. v. Fair*
    576 F. Supp. 2d 1175 (D. Colo. 2008) ............................................................. 9

*Steckman v. Hart Brewing, Inc.*
    143 F.3d 1293 (9th Cir. 1998) ............................................................................ 25

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) ............................................................................. 6

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*
    1 Cal.3d 586 (1970) ......................................................................................... 24

*United States v. Liu*
    731 F.3d 982 (9th Cir. 2013) ............................................................................ 25

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981) ............................................................................ 6

*Worth v. Universal Pictures, Inc.*
    5 F. Supp. 2d 816 (C.D. Cal. 1998) ................................................................. 19

*Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*
    2015 WL 7281618 (E.D. La. Nov. 16, 2015) ................................................. 22

*Zindel v. Fox Searchlight Pictures, Inc.*
    2018 WL 3601842 (C.D. Cal. July 23, 2018) ................................................. 7

*Zito v. Steeplechase Films, Inc.*
    267 F. Supp. 2d 1022 (N.D. Cal. 2003) .......................................................... 21

SMRH:487953219.3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Within the intellectual property realm, the relative ease of securing a copyright registration—often without substantive examination and payment of only a nominal fee—has promoted an influx of copyright litigation.  And, despite a chorus of critics who challenge the merits of many such cases, they regularly yield settlement payments in lieu of a more costly defense.  Still, even the most borderline of cases must satisfy that basic tenet of copyright law that one cannot protect or monopolize a general idea, but only unique expressions of that idea.  The allegations in this case do not meet that standard.

Plaintiff would expand the scope of copyright protection by claiming a monopoly on all depictions of a white unicorn.  In 2016, Plaintiff responded to a request from defendant 1AND8, Inc. dba Museum of Ice Cream ("MOIC") for a design proposal reflecting a rainbow themed exhibit.  That design proposal, which MOIC ultimately did not use, contained numerous elements.  Among them was a simple white unicorn.



In 2017, MOIC opened an interactive "pop-up" exhibit in San Francisco, and included a different white unicorn within one of its exhibit rooms.  Plaintiff then commenced this suit against MOIC and MOIC's founder, Maryellis Bunn (collectively, "Defendants"), alleging that Defendants' use of a white unicorn

1 constitutes copyright infringement, breach of contract, unjust enrichment and unfair
2 competition.

3    Each of Plaintiff's causes of action fails to allege a plausible claim.  As to the
4 copyright infringement claim, Plaintiff cannot monopolize the underlying idea of a
5 white unicorn—this idea is free for others, including MOIC, to use.  Copyright law
6 protects only the particular original expression of the underlying idea.  When the
7 arguably protectable elements of Plaintiff's unicorn are compared to MOIC's
8 unicorn, it is clear that Plaintiff cannot plausibly allege that the works are
9 substantially similar.

10    Plaintiff also has failed to allege actionable claims for unjust enrichment and
11 unfair competition.  These claims are based solely on the alleged unauthorized use
12 of Plaintiff's work, and are therefore preempted by the Copyright Act.

13    Finally, Plaintiff has failed to state an actionable claim for breach of contract
14 because the parties' Non-Disclosure Agreement ("NDA") expressly excludes any
15 information which is generally known by the public.  Undoubtedly, the general
16 public was aware of the idea of a white unicorn long before the parties entered into
17 the NDA.  Accordingly, Plaintiff cannot plausibly allege any breach of the NDA.

18 **II.    FACTUAL BACKGROUND**

19    **A.    The Parties And Their Prior Association**

20    MOIC, which was co-founded by defendant Maryellis Bunn, is an interactive
21 "pop-up" art exhibit which features brightly colored rooms designed around a
22 central ice cream theme.  [Complaint, ¶¶ 8, 10.]  MOIC opened its first location in
23 2016 in New York City, and has since launched exhibits in Los Angeles and San
24 Francisco.  [*Id.*, ¶¶ 8, 11, 19.]  MOIC has achieved significant success and publicity,
25 being dubbed "one of the most Instagrammed spaces in the country" and having
26 been visited by celebrities like Beyonce, Kim Kardashian, and Drew Barrymore.
27 [Complaint, ¶ 30]; (Declaration of Gazal Pour-Moezzi in Support of Motion to
28 Dismiss ("Pour-Moezzi Decl."), ¶ 3, Ex. A).

To create its ice cream themed rooms, MOIC sometimes works with other artists.  [*See* Complaint, ¶ 11.]  In 2016, MOIC decided to include a rainbow themed room in a future project, and requested that Pretty in Plastic, Inc. ("Plaintiff") submit a bid for several designs, including a "rainbow sherbet" room.  [*Id.*, ¶ 12.] Plaintiff requested that MOIC sign an NDA prior to sharing its proposal.  [*Id.*, ¶ 14.]  Ms. Bunn signed the NDA on behalf of MOIC and returned it to Plaintiff on November 3, 2016.  [*Id.*]  The NDA requires MOIC to use "reasonable means" to "prevent the disclosure[of] and protect" Plaintiff's "Confidential Information."  (*See* Pour-Moezzi Decl., ¶ 4, Ex. B.)  The NDA defines "Confidential Information" as:

> Any information disclosed by or on behalf of [Plaintiff] to [MOIC] at any time before or after the execution of th[e NDA] . . . including, without limiting the generality of the foregoing, any drawings, notes, data, reports, photographs, audio and/or video equipment, models, samples and the like and any copies or reproductions thereof.

(Pour-Moezzi Decl., Ex. B at ¶¶ 1-2.)  The NDA also expressly provides that "Confidential Information shall not include information which <u>was or becomes generally available to the public</u> . . . ."  (*Id.* (emphasis added).)

In November 2016, Plaintiff submitted its proposals, including one for the rainbow themed room, as illustrated below ("Plaintiff's Work").  [Complaint, ¶¶ 16-17.]

SMRH:487953219.3



Ultimately, MOIC did not move forward with any of Plaintiff's proposals, including the one shown above.  [*Id.*, ¶ 18.]

**B.**     **MOIC Opens A Location In San Francisco**

In September 2017, MOIC opened a pop-up exhibit in San Francisco, which featured, among other rooms, a rainbow themed room, as illustrated below (the "MOIC Rainbow Room").  (*See* Pour-Moezzi Decl., ¶ 5, Ex. C.)

Case No. 2:18-cv-06091-GW (SKx)
MOTION TO DISMISS COMPLAINT

**C.**   **Plaintiff Sues Defendants Because The MOIC Rainbow Room Includes A Unicorn**

On July 13, 2018, nearly one year after MOIC opened its San Francisco location, Plaintiff filed this action against MOIC and Ms. Bunn, asserting claims for (1) copyright infringement, (2) breach of contract, (3) unjust enrichment, and (4) unfair competition.  [*See generally* Complaint.]

In effect, Plaintiff's complaint alleges that MOIC's use of a unicorn in its San Francisco exhibit constitutes copyright infringement because Plaintiff's Work also contained a unicorn.  [*See* Complaint, ¶ 19 ("MOIC's San Francisco exhibition [contained] a solid-white unicorn with a long, gold horn nearly identical to the solid-white unicorn with a long, gold horn in [Plaintiff's Work]"); *id.*, ¶ 29 ("[Plaintiff] created the solid-white unicorn with a long, gold horn for a Rainbow Sherbet room and provided it to Defendants on condition that Defendants not disclose it or use it.").]

These same allegations ground Plaintiff's state-law claims for breach of contract, unjust enrichment, and unfair competition.  [*See, e.g.*, *id.*, ¶¶ 48-49 ("The contract required Defendants to maintain confidentiality of design proposals provided to them. . . . Defendants have breached the [NDA] by, for example, using the design proposals in a public exhibition at the San Francisco Museum of Ice Cream location.") (breach of contract claim); *id.*, ¶ 54 ("It would be unjust for Defendants to retain the benefits and profits flowing from Defendants' wrongful use of the design proposals") (unjust enrichment claim); *id.*, ¶ 58 ("Defendants' unauthorized use of [Plaintiff's] copyrighted work" constitutes "unlawful, unfair, or fraudulent business acts of unfair competition in violation of Sections 17200, *et seq.*, and California common law") (unfair competition claim).]

## III.   THE ENTIRE COMPLAINT SHOULD BE DISMISSED

### A.   Legal Standard Applicable To Motion To Dismiss

A motion to dismiss should be granted when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a complaint must plead sufficient facts from which a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For purposes of ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts, however, need not "assume the truth of legal conclusions . . . cast in the form of factual allegations, *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), or accept as true allegations contradicted by judicially-noticeable facts, *Epikhin v. Game Insight N. Am.*, 2015 U.S. Dist. LEXIS 66188, at *10-11 (N.D. Cal. May 20, 2015).

Although Rule 12(b)(6) motions are generally limited to the allegations in the complaint, courts "may consider evidence on which the complaint necessarily relies if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (citations and internal quotation marks omitted).  A court may also consider "matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B.   Plaintiff Fails To State A Claim For Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege two elements:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006).  For this second element, a plaintiff

must allege facts that demonstrate "unlawful appropriation, that is, *illicit* copying . . . because copyright law does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).  Indeed, "a defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work." *Id.*  Rather, "[t]o infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'" *Id.*

To determine whether two works are substantially similar, courts employ "a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.'" *Id.* at 1118.  The extrinsic test—the only test relevant to a motion to dismiss—"assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.*  "Before that comparison can be made, the court must 'filter out' the unprotectable elements of the plaintiff's work— primarily ideas and concepts, material in the public domain, and *scenes a faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.*  Thus, "[t]he key question always is:  Are the works substantially similar beyond the fact that they depict the same idea?" *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010) (emphasis added).

A court may decide whether there is sufficient objective similarity under the extrinsic test as a matter of law on a motion to dismiss. *Rentmeester*, 883 F.3d at 1123 (affirming dismissal of copyright infringement claim where two photos were not substantially similar as a matter of law); *Christianson v. West Publishing Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss"; affirming dismissal of copyright infringement claim on a motion to dismiss); *Zindel v. Fox Searchlight Pictures, Inc.*, No. CV 18-1435 PA, 2018 WL 3601842 (C.D. Cal. July 23, 2018) (granting motion to dismiss copyright infringement claim for lack of substantial similarity); *Gallagher v. Lions Gate*

*Entm't*, No. 2:15-cv-2739-ODW, 2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) (same); *Muromura v. Rubin Postaer and Associates*, No. CV 12-9263 DDP, 2014 WL 4627099, at *2 (C.D. Cal. Sept. 16, 2014) (same); *Erickson v. Blake*, 839 F. Supp. 2d 1132 (D. Or. 2012) (same).

### 1.   The Works Are Not Substantially Similar As A Matter Of Law

Plaintiff's claim for copyright infringement rests solely on allegations that the unicorn used in the MOIC Rainbow Room is substantially similar to the unicorn in Plaintiff's Work.  However, a visual comparison of the works confirms that Plaintiff cannot state a claim for copyright infringement because, by any objective standard, the parties' respective unicorns are not substantially similar.  Indeed, after filtering out the unprotectable elements in Plaintiff's Work, the remaining elements are strikingly different from those present in MOIC's unicorn.

### a.   Numerous Components Of Plaintiff's Work Are Unprotectable

Before comparing the two works for substantial similarity, the Court must first "filter out and disregard the nonprotectable elements" of Plaintiff's Work, including all "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea."  *Muromura*, 2014 WL 4627099, at *2.

In its Complaint, Plaintiff alleges that MOIC's use of a unicorn in its San Francisco exhibit constitutes copyright infringement.  [*See, e.g.*, Complaint, ¶¶ 19-20, 24-25, 28, 29.]  However, Plaintiff does not have a monopoly on all depictions of a unicorn, as the *idea* of a unicorn is "within the common heritage of humankind," and thus free for others to use.  *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003).

The Ninth Circuit and courts within this Circuit have repeatedly held accordingly.  *See, e.g.*, *Satava v. Lowry*, 323 F.3d at 810-11 (copyright protection does not extend to the idea of a jellyfish sculpture, nor the natural characteristics of

jellyfish such as bright colors, tendril-like tentacles, and rounded bells); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (anyone is free to create work based on the idea of two dolphins crossing under sea; "[n]o artist may use copyright law to prevent others from depicting this ecological idea."); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901-02 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls . . . . Appellants therefore may place no reliance upon any similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals."); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) (others are free to utilize idea of depicting a jewel encrusted bee pin; "We think the production of jeweled bee pins is a larger private preserve than Congress intended to be set aside in the public market without a patent.  A jeweled bee pin is therefore an 'idea' that defendants were free to copy."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915-16 (9th Cir. 2010) (the concept of depicting a young, fashionable female doll with exaggerated features is unoriginal and an unprotectable idea); *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991) (others are free to copy the idea of a mask depicting a man in the moon); *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp 2d 1115, 1136 (C.D. Cal. 2009) ("no copyright protection can be afforded the idea of producing plush toys that resemble particular animals"); *Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560, 568 (C.D. Cal. 1994) (no copyright protection for the idea of a talking, plush teddy bear); *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1180-81 (D. Colo. 2008) (others are free to copy the idea of sculptures of elk; "[a]n accurate portrayal of something that exists in the world (i.e., facts and ideas, such as a particular bottle) cannot be copyrighted.").

Certain features of Plaintiff's unicorn, including its colors and long horn also are unprotectable elements as they are "indispensable or at least standard in the

1   treatment" of unicorns.  *Muromura*, 2014 WL 4627099, at *2.  Both Plaintiff's

2   Work and the MOIC Rainbow Room feature a white unicorn with a long, gold horn.

3   [Complaint, ¶ 17.]  However, unicorns are generally depicted with a white body and

4   single gold horn.  For example, the Merriam-Webster Dictionary defines "unicorn"

5   as:

> A mythical, <u>usually white</u> animal generally depicted with
> the body and head of a horse with long flowing mane and
> tail and a <u>single often spiraled horn in the middle of the
> forehead</u>.

(*See* Request for Judicial Notice in Support of Motion to Dismiss Complaint

("RJN"), Ex. A (emphasis added).)[1]  This entry also provides an illustration of a

unicorn, which is depicted with a white body, (RJN, Ex. A at 3), and provides

further images which depict a white unicorn with a gold horn (RJN, Ex. A at 4-5).

Similarly, the Encyclopedia Britannica contains an entry on "Unicorns"

which states:

> Unicorn, mythological animal resembling a horse or a kid
> with a <u>single horn on its forehead</u> . . . . The earliest
> description in Greek literature of a single-horned (Greek
> monokeros, Latin unicornis) animal was by the historian
> Ctesias (c. 400 BCE), who related that the Indian wild ass
> was the size of a horse, <u>with a white body</u> . . . .

---

[1]   This Court may take judicial notice of dictionary definitions from the
Merriam-Webster dictionary.  *See, e.g.*, *Sexy Hair Concepts, LLC v. Conair
Corp.*, No. 212cv02218-CBM, 2013 WL 12119721, at *3 (C.D. Cal. Feb. 25,
2013) ("Conair requests that the Court take judicial notice of the dictionary
definition of the word 'sexy' as defined in the current version of the Merriam-
Webster dictionary.  The request is made pursuant to [FRE] 201 on the basis
that the definition "can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned . . . . The Court GRANTS
this request."); *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-344-
RMW, 2015 WL 4694049, at *2 (N.D. Cal. Aug. 6, 2015) (taking judicial
notice of Merriam-Webster Dictionary definitions of "celiac disease").

Case No. 2:18-cv-06091-GW (SKx)

MOTION TO DISMISS COMPLAINT

1   (*See* RJN, Ex. B (emphasis added).)[2]  Accordingly, these elements—common to the

2   depiction of unicorns—are not subject to copyright protection and may be freely

3   used by others, including MOIC.

4        Indeed, courts have reached the same conclusion under similar facts.  For

5   example, in *Satava*, 323 F.3d at 807, the Ninth Circuit considered a copyright

6   infringement claim concerning glass-in-glass sculptures of jellyfish.  The sculpture

7   was described as a "vertically oriented, colorful, fanciful jellyfish with tendril-like

8   tentacles and a rounded bell" encased in glass.  *Id.* In reversing the district court's

9   grant of a preliminary injunction against the defendant, the Ninth Circuit reasoned

10  that these "standard and stereotyped elements" are "so typical of jellyfish

11  physiology that to recognize copyright protection in their combination effectively

12  would give [plaintiff] a monopoly on lifelike glass-in-glass sculptures of single

13  jellyfish with vertical tentacles." *Id*. at 812.  Accordingly, the Court concluded that

14  plaintiff "[could] not prevent other artists from combining [these elements.]" *Id*.

15       Similarly, the Court in *Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp.

16  560, 568 (C.D. Cal. 1994), considered a copyright infringement claim concerning

17  two talking teddy bears.  The plaintiff contended that the defendant's bear infringed

18  plaintiff's copyrights because, among other things, both bears were made of plush

19  material, wore clothes, featured protruding noses, and paws and ears in a light color

20  which contrasted with the rest of the fur.  *Id*.  In granting the defendant's motion for

21  summary judgment, the Court reasoned that "all of these features . . . are derived

22  from the common idea of a talking, plush teddy bear." *Id*.  The Court noted that the

23  plush material was "common to most stuffed toys," that "[m]any stuffed animals

24  wear clothes," and that the "contrasting paw and ear colors are standard on teddy

25  bears everywhere." *Id*.  The Court thus concluded that plaintiff "may not rely on

---

27  [2]      The Court may judicially notice an entry from the Encyclopedia Britannica.

28  *See, e.g.*, *Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004) (taking judicial
         notice of an article in the Encyclopedia Britannica).

1   any of these standard or functional features to demonstrate substantial similarity."

2   *Id.*; *see also Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1136 (C.D. Cal.

3   2009) (color of capuchin and lemur stuffed toys unlikely to be protectible, "given

4   that it resembles the animals as they are found in nature."); *Pasillas*, 927 F.2d at 443

5   & n. 2 (crescent moon shape, depiction of human face in the center, and white or

6   off-white color are standard, stock elements in treatment of idea of a man in the

7   moon mask).

8       And, in analyzing the depiction of two stars in plaintiff's and defendant's

9   respective children's books, the Ninth Circuit concluded:

10          Finally, we compare the two depictions of stars being
            polished.  Obvious similarities again appear.  The subject
11          matter—a star being polished—is the same.  Furthermore,
            the stars being polished are both five-pointed, yellowish,
12          and smiling.  But the basic idea of polishing a star and the
            depiction of the common features of stars [e.g., yellow
13          color, five-pointed] are unprotectible[.]

14    *Cavalier v. Random House, Inc.*, 297 F.3d 815, 827 (9th Cir. 2002) (emphasis

15   added).

16       Just as teddy bears commonly feature contrasting paw and ear colors, stars are

17   depicted as yellow, and jellyfish feature tentacles, unicorns are commonly depicted

18   in white with a golden long horn.  These elements are thus "treated like ideas and

19   are therefore not protected by copyright."  *Rice v. Fox Broadcasting Co.*, 330 F.2d

20   1170, 1175 (9th Cir. 2003).  As a matter of law, Plaintiff may not rely on these

21   elements in alleging copyright infringement against Defendants.  *Apple Computer,*

22   *Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (plaintiff "may place *no*

23   reliance upon any similarity in expression resulting from unprotectable elements.").

### b.   The Protectable Elements Of Plaintiff's Unicorn Are Strikingly Different From MOIC's Unicorn

24

25       After filtering out the unprotectable elements in Plaintiff's Work, a side-by-

26   side comparison of the parties' respective unicorns reveals starkly different

27   expressive elements.

28

| Plaintiff's Unicorn | MOIC's Unicorn |
|---|---|
|  | |

For example, Plaintiff's unicorn possesses a longer, bulkier and more muscular torso.  By contrast, MOIC's unicorn features a leaner, shorter, and less muscular torso.  While Plaintiff's unicorn has shorter, muscular legs, and small hooves, MOIC's unicorn has long, thin legs and appreciably larger hooves.  Plaintiff's unicorn features a long tail and no mane along the back of its neck, while MOIC's unicorn has a short, bushy tail, and a mane along its neck.  The unicorns' faces also appear quite distinct as Plaintiff's unicorns features a fuller face with robust cheeks and round eyes, whereas MOIC's unicorn features a thinner face, almond-shaped eyes and a longer horn.  Further, the unicorns are positioned differently.  MOIC's unicorn stands with its right hind leg behind its left hind leg and its left front leg behind its right front leg.  The legs of MOIC's unicorn are positioned in the exact opposite way, namely, its left hind leg is behind its right hind leg and its right front leg is behind its left front leg.  Additionally, while Plaintiff's unicorn is depicted with its head, eyes and mouth angled downwards, the head, eyes and mouth of MOIC's unicorn are angled upright.  In sum, the only commonality between the works is the idea or concept of the unicorn, but not the unique expression of that idea.

Case No. 2:18-cv-06091-GW (SKx)
SMRH:487953219.3
MOTION TO DISMISS COMPLAINT

In light of the obvious and material differences in the expressive elements, as a matter of law, Plaintiff cannot plausibly allege that the protected elements of its work are substantially similar to the unicorn in the MOIC Rainbow Room.

The facts of the Ninth Circuit's recent decision, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) are instructive.  There, the plaintiff alleged that Nike infringed his copyright in a photograph of Michael Jordan when it commissioned its own photograph of Jordan in the grand jete pose and used the photograph to create its famous "Jumpman" logo.  *Id*. at 1116.  The district court granted Nike's motion to dismiss with prejudice, finding no substantial similarity between the two works as a matter of law.  *Id*.  The Ninth Circuit affirmed, finding that the plaintiff could not plausibly allege that Nike copied enough of the *protected* expression from his photo to show substantial similarity.  *Id*. at 1121.  After filtering out the nonprotectable elements of the plaintiff's work (i.e., plaintiff "cannot prohibit other photographers from taking their own photos of Jordan in a leaping, *grand jete*-inspired pose"), the Ninth Circuit went on to compare the protectable elements of the works, namely the selection and arrangement of the photos' elements.  *Id*. at 1121.

| Plaintiff's Work | Nike's Work |
| --- | --- |
|  | |

The Court noted numerous differences between the two photos, including: "[t]he position of each of his limbs in the two photos;" the setting of each photo – the grassy knoll present in the plaintiff's photo was missing from Nike's photo; the positioning of the basketball hoops – the hoop in the plaintiff's photo is placed out

SMRH:487953219.3

of Jordan's reach, whereas in Nike's photo, the hoop is easily within Jordan's reach; and the background of each photo – while the background of the plaintiff's photo is a cloudless blue sky with a large sun, the background of the Nike photo has no sun and consists of the Chicago skyline silhouetted against late dusk or early dawn.  *Id.* at 1121-22.

In light of these material differences, the Court concluded:

> [T]hese differences in selection and arrangement of elements, as reflected in the photos' objective details, preclude as a matter of law a finding of infringement . . . . What Rentmeester's photo and the Nike photo share are similarities in general ideas or concepts:  Michael Jordan attempting to dunk in a pose inspired by ballet's *grand jete*; an outdoor setting stripped of most of the traditional trappings of basketball; a camera angle that captures the subject silhouetted against the sky.  <u>Rentmeester cannot claim an exclusive right to ideas or concepts at that level of generality, even in combination.  Permitting him to claim such a right would withdraw those ideas or concepts from the "stock of materials" available to other artists, . . . thereby thwarting copyright's "fundamental objective" of "fostering creativity." Copyright promotes the progress of science and the useful arts by "encouraging others to build freely upon the ideas and information conveyed by a work."</u>

*Id.* at 1123 (emphasis added).

Similarly, in *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829 (S.D.N.Y. 2016), the district court granted the defendant's motion to dismiss a complaint for copyright infringement without leave to amend.  There, the plaintiff owned a copyright in his sculpture featuring a Pegasus breaking through the roof of a car, and sued Toyota for copyright infringement related to Toyota's advertising which featured a car transporting a large stuffed hybrid of a unicorn and Pegasus. *Id.* at 832-33.

| Plaintiff's Work | Toyota's Work |
|---|---|
|  |  |

Toyota moved to dismiss the plaintiff's complaint, contending that the plaintiff could not show as a matter of law that the two works were substantially similar. *Id.* In granting Toyota's motion to dismiss, the Court first filtered out the non-protectable elements of the plaintiff's work. *Id.* at 835-36. Specifically, the Court stated that "there can be no question that plaintiff does not have a monopoly on all depictions of a Pegasus, even those juxtaposed with the roof of an automobile[.]" *Id.* at 835. In comparing the protectable expression of the works, the Court concluded that "there is almost nothing similar between plaintiff's Sculpture, on the one hand, and defendants' allegedly infringing works, on the other." *Id.* 836. The Court noted numerous differences in the works including that plaintiff's Pegasus was "strikingly realistic and life-like" while defendant's was "a pink, smiling, oversized stuffed animal." *Id.* The Court noted that the vehicles in each work were "also highly dissimilar." *Id.* In light of these stark differences, the Court determined that "plaintiff's copyright infringement claim fails as a matter of law." *Id.* at 839.

The facts of *Eng v. Captain Blue Hen Comics*, No. 14-cv-3631, 2014 WL 2941280, at *3 (E.D.N.Y. June 30, 2014) are also instructive. There, the plaintiff alleged to own a copyright for a unicorn character who wears sunglasses and has

SMRH:487953219.3

blonde hair, and asserted a copyright infringement claim against the defendant, who published a comic which also featured a shade-wearing and blonde-haired unicorn. *Id*. at *1.  In granting the defendant's motion to dismiss with prejudice, the Court found that the two works were not substantially similar, noting that simply because "both characters are unicorns wearing sunglasses is not a sufficient basis for a valid infringement claim."  *Id*. at *3.

In *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1207-08 (D. Haw. 2006), the plaintiff, who owned a copyright for his photograph of a hula dancer, asserted a copyright infringement claim based on defendant's stained-glass featuring a hula dancer, as depicted below.  *Id*. at 1199-1200.

| Plaintiff's Work | Defendant's Work |
|---|---|
|  |  |

The Court denied a motion for a preliminary injunction, finding that the two works were not substantially similar in their protectable elements.  *Id*. at 1208. After filtering out the non-protectable elements of the plaintiff's work (i.e., a hula dancer in standard hula dress, holding a traditional hula dance pose), the court determined that the two works were not substantially similar, including because the dancers' bodies faced different directions, appeared at slightly different angles and positions, and differed in the depiction of their arms and feet.  *Id*. at 1207-08.

Like the subjects in *Rentmeester*, *Croak*, *Eng*, and *Reece*, "there can be no question that [P]laintiff does not have a monopoly on all depictions" of a gold-

1   horned white unicorn.  *Croak*, 174 F. Supp. 3d at 835.  Once this general,

2   unprotected idea is filtered out from the analysis, it is objectively clear that

3   Plaintiff's and MOIC's unicorns are expressed in very different ways.  Because

4   Plaintiff cannot *plausibly* allege that the unicorn in the MOIC Rainbow Room is

5   substantially similar to its work, this claim must be dismissed.  *See Iqbal*, 556 U.S.

6   at 678 (a complaint must "state a claim to relief that is *plausible* on its face.")

7   (emphasis added); *Gallagher*, 2015 WL 12481504, at *2 ("[W]hen substantial

8   similarity is absent after a review of the works at issue no amendment could cure the

9   complaint's deficiencies, thus, dismissal with prejudice is not uncommon.").[3]

10   ## C.   Plaintiff's Claims For Unjust Enrichment And Unfair Competition Are Preempted By The Copyright Act

11       The Ninth Circuit employs a two-part test to determine whether the Copyright

12   Act preempts a state law claim.  Preemption occurs where: (1) a plaintiff's work

13   falls within the "subject matter" of the Copyright Act; and (2) the rights asserted by

14   a plaintiff under state law are "equivalent to" those protected by the Copyright Act.

15   *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001).  With respect

16   to the first factor,

17       Sections 102 and 103 of the [Copyright] Act identify the
18       works of authorship that constitute the 'subject matter' of

19   ---

20   [3]   Although Plaintiff purports to base its copyright infringement claim on only
     the use of a unicorn in the MOIC Rainbow Room, for the avoidance of doubt,
21   Defendants also note that the MOIC Rainbow Room, as a whole, does not
     infringe Plaintiff's Work as a whole.  Indeed, there are countless differences
22   between the two works precluding a finding of substantial similarity as a
     matter of law, including that Plaintiff's Work features several elements which
23   are clearly not present in the MOIC Rainbow Room: rainbow sherbet bean
     bags, a blue sky background, and one solid rainbow.  By contrast, in addition
24   to the unicorn, the MOIC Rainbow Room features walls imprinted with
     kaleidoscopic rainbow shapes.  Moreover, that both works feature rainbows is
25   not relevant to Plaintiff's claim, as the Complaint acknowledges that *MOIC
     explicitly requested* a design proposal for a "rainbow" room.  [Complaint, ¶
26   12 ("[Ms.] Bunn personally asked [Plaintiff] to bid on one item and four
     rooms, including a "Rainbow sherbet room.").]

1
2
3

> copyright.  Section 102 of the Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression . . . from which they can be . . . reproduced . . . either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).

4   *Id*. at 1139.  To "come within the subject matter of copyright," a work "does not

5   necessarily have to be actually protected by a specific copyright or even itself be

6   copyrightable; it just has to be 'within the subject matter' of the Act."  *Firoozye v.*

7   *Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001).  With respect to

8   the second factor, "a right which is the 'equivalent to copyright' is one that is

9   infringed by the mere act of reproduction."  *Laws v. Sony Music Entm't*, 448 F.3d

10  1134, 1146 (9th Cir. 2006).  Thus, "[t]o survive preemption, the state cause of action

11  must protect rights which are <u>qualitatively different</u> from the copyright rights."  *Del*

12  *Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987)

13  (emphasis added) (overruled on other grounds).

14          Courts have uniformly held that when a state law claim is based entirely on

15  the unlawful use of purported copyrighted works, the claim is completely preempted

16  by the Copyright Act.  *See, e.g.*, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209,

17  1212 (9th Cir. 1998); *Firoozye*, 153 F. Supp. 2d at 1129-30; *Worth v. Universal*

18  *Pictures, Inc.*, 5 F. Supp. 2d 816, 820-22 (C.D. Cal. 1998); *Dielsi v. Falk*, 916 F.

19  Supp. 985, 993 (C.D. Cal. 1996).

20          Here, Plaintiff's claims for unjust enrichment and unfair competition are

21  based entirely on the alleged unauthorized use of Plaintiff's Work.  Accordingly,

22  both are completely preempted by the Copyright Act.

23          **1.**      **<u>Plaintiff's Work Falls Within The Subject Matter Of</u>**
                        **<u>Copyright</u>**

24

25          Plaintiff's claims for unjust enrichment and unfair competition are based on

     Defendants' alleged use of Plaintiff's Work, i.e., the design proposals submitted to

26

     MOIC.  [Complaint, ¶ 54 (unjust enrichment claim) ("It would be unjust for

27

     Defendants to retain the benefits and profits flowing from Defendants' wrongful use

28

Case No. 2:18-cv-06091-GW (SKx)
                                                                          MOTION TO DISMISS COMPLAINT

of the <u>design proposals</u>." (emphasis added)); *id.*, ¶ 58 (unfair competition claim) (only allegedly unfair conduct identified is "Defendants' unauthorized use of [Plaintiff's] copyrighted work." (emphasis added).)  Undoubtedly, Plaintiff's design proposals, which constitute pictorial works, fall within the "subject matter of the Copyright Act" for purposes of a preemption analysis.  *See* 17 U.S.C. § 102(a)(5) (identifying "pictorial, graphic, and sculptural works" as eligible for copyright protection).

### 2.     **Plaintiff's Claims Are Equivalent To The Copyright Act**

Additionally, Plaintiff's claims for unjust enrichment and unfair competition assert rights which are equivalent to those protected by the Copyright Act.  Each claim is based *solely* on Defendants' alleged unauthorized use of Plaintiff's Work. [*See* Complaint, ¶¶ 53-55 (unjust enrichment claim) ("[Plaintiff] . . . provided design proposals described in this complaint to Defendants with the expectation that Defendants would not disclose or exploit the fruit of [Plaintiff's] labor . . . . It would be unjust for Defendants to retain the benefits and profits flowing from Defendants' wrongful use of the design proposals."); *id.*, ¶¶ 58-59 (unfair competition claim) ("Defendants have engaged in unlawful, unfair, or fraudulent business acts of unfair competition in violation of Sections 17200 *et seq.*, and California common law. This conduct includes Defendants' unauthorized use of [Plaintiff's] copyrighted work.").

Because Plaintiff's unjust enrichment and unfair competition claims are not "qualitatively different" from rights protected by the Copyright Act, these claims are preempted and must be dismissed.  *See, e.g.*, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (unfair competition claim preempted by Copyright Act); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1125 (C.D. Cal. 2001) (dismissing unfair competition claim on grounds of preemption); *Motown Record Corp. v. George Hormel & Co.*, 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987) (unfair competition claim preempted where essence of

claim is derived from defendants' unauthorized use of copyrighted work); *Del Madera*, 820 F.2d at 977 (unjust enrichment claim preempted); *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (dismissing unjust enrichment claim on grounds of preemption; "While a claim for unjust enrichment may require proof that a benefit was conferred on the defendant, where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue, the rights the plaintiff holds in the copyrighted work, and does not avoid preemption."); *Firoozye*, 153 F. Supp. 2d at 1126 (dismissing unjust enrichment claim on grounds of preemption; "where the plaintiff's theory of relief is that the defendant has improperly benefited from using a certain work and that a contract should be implied in law (e.g., a quasi-contract, quantum meruit, or unjust enrichment claim), such a claim is preempted.").

### D.   Plaintiff Fails To State A Claim For Breach Of Contract

Plaintiff's breach of contract claim also fails because Plaintiff has not plausibly pleaded that Defendants have breached the NDA.  Plaintiff's breach of contract claim is based on Defendants' alleged failure "to maintain confidentiality of design proposals provided to them" by Plaintiff.  [Complaint, ¶ 47.]  Plaintiff alleges that "Defendants have breached the [NDA] by, for example, using the design proposals in a public exhibition at the San Francisco Museum of Ice Cream location."  [Complaint, ¶ 49.]

While the NDA purports to protect Plaintiff's "Confidential Information," it expressly excludes certain types of information from its definition of "Confidential Information."  (Pour-Moezzi Decl., Ex. B.)  Specifically, the NDA states:

> **Confidential information shall not include information which (a) was or becomes generally available to the public** other than as a result of disclosure by the Recipient to the public or any third party in violation of this Agreement;. . . .

(Pour-Moezzi Decl., Ex. B at ¶ 3 (emphasis added).)  Thus, by definition, "Confidential Information" does not protect information which is publicly available.

The idea of a white unicorn cannot be "Confidential" under the NDA because such an idea is ubiquitous in popular culture and was generally known by the public long before the parties entered into the NDA.  Indeed, the Merriam-Webster Dictionary defines unicorn as a "mythical, usually white animal[.]"  (RJN, Ex. A at 2 (emphasis added).)  Similarly, the Encyclopedia Britannica notes that the earliest description of a unicorn dates back to 400 B.C.E. and was depicted "with a white body."  (RJN, Ex. B at 1 (emphasis added).)  As discussed above in connection with Plaintiff's copyright infringement claim, Plaintiff does not have a monopoly on all depictions of a white unicorn.  Thus, even though the MOIC Rainbow Room displays a white unicorn, this display is not, and never was, a disclosure of Plaintiff's "Confidential Information."

Accordingly, Plaintiff's breach of contract claim should be dismissed.  *See Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, No. 13-cv-2856, 2016 WL 5719819, at *13 (S.D. Cal. Sept. 30, 2016) (no breach of contract as a matter of law where NDA excludes publicly available information and alleged breach pertained to such publicly available information); *A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ 4501, 2014 WL 2933155, at *6 (S.D.N.Y. June 30, 2014) (granting motion to dismiss breach of contract claim where "[a]s a matter of law, the information disclosed [by defendant] was not confidential and therefore [plaintiff] cannot maintain a claim for breach of contract on this basis."); *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 Fed. App'x 516, 518 (2d Cir. 2009) (holding that information generally available to the public could not support a claim for breach of a confidentiality clause because the clause expressly excluded public information); *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2015 WL 7281618, at *7 (E.D. La. Nov. 16, 2015) (breach of contract claim cannot be based on use of information which is publicly available; "To the extent that [plaintiff] bases its breach of contract claim on [defendant's] use of information that appears in [plaintiff's] [publicly available] patent applications, its claim is

without merit"); *Conference Archives, Inc. v. Sound Images, Inc.*, No. 3:2006-76, 2010 WL 1626072, at *2 (W.D. Pa. Mar. 31, 2010) ("because the code in question is 'information generally available to the public,' the NDA provides no remedy, and the Plaintiff fails to state a claim on breach of contract grounds."); *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (on a 12(b)(6) motion, the court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint.").

### E.    Maryellis Bunn Should Be Dismissed From This Action

Should the Court deny dismissal of the entire action, it should still dismiss the claims against Ms. Bunn in her personal capacity.

#### 1.    The Breach Of Contract Claim Must Be Dismissed Against Ms. Bunn

Plaintiff claims that MOIC entered into the NDA and breached it. [Complaint, ¶ 14.]  Ms. Bunn, an MOIC officer, signed the NDA on behalf of MOIC.  [*Id.*]  On that basis, Plaintiff seeks personal liability against Ms. Bunn for the alleged breach.

However, directors and officers are not personally liable on contracts they sign on behalf of a corporation unless they expressly agree to bind themselves as individuals.  *See* Restatement (Third) of the Law of Agency § 6.01(2) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal . . . the agent is not a party to the contract unless the agent and third party agree otherwise.").  This has been described as "a fundamental concept of the law of corporations."  *Kumar, Inc. v. Kudlow*, 413 Fed. Appx. 981, 938 (9th Cir. 2011).

Notably, Plaintiff does not allege that Ms. Bunn entered into the NDA in her personal capacity.  To the contrary, it acknowledges that the contract was between Plaintiff and MOIC.  [Complaint, ¶ 15 (alleging duties as between MOIC and Plaintiff, not Ms. Bunn personally).]  The NDA itself reflects that Ms. Bunn signed

as "an officer" of MOIC, not in her personal capacity.  (Pour-Moezzi Decl., Ex.B at 3 ("the Recipient has caused this Agreement to be executed by its duly authorized officer").)  As a matter of law, Ms. Bunn cannot be held personally liable on a contract that she entered into solely as an agent of MOIC.  *Kumar*, 413 Fed. Appx. at 938 (citing *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970) ("Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually.")); *see also Buckley v. Cracchiolo*, 2014 WL 545751 at *3 (C.D. Cal. 2014) (dismissing breach of contract claims brought against corporate officers in their personal capacities); *Design Associates, Inc. v. Welch*, 224 Cal. App. 2d 165 (1964) (demonstrating longstanding application of this principle).

Thus, Plaintiff's breach of contract claim against Ms. Bunn, who signed the NDA solely as an agent of MOIC, is improper and must be dismissed.

### 2.   The Copyright Infringement, Unjust Enrichment, and Unfair Competition Claims Must Be Dismissed Against Ms. Bunn

Plaintiff's copyright infringement claim also must be dismissed as against Ms. Bunn.  All conduct alleged against Ms. Bunn results from her position as the founder and creative director of MOIC.  [Complaint, ¶¶ 8, 24-27, 34.]  No conduct is alleged against Ms. Bunn in her personal capacity.

"Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position."  *Haidinger-Hayes*, 1 Cal.3d at 595.  Rather, personal liability can only attach if that officer or director directly "participated in the wrong or directed that it be done."  *Id*.  As to copyright infringement specifically, a plaintiff must allege specific facts demonstrating that an individually named principal was the "guiding spirit" or "central figure" in the alleged copyright infringement.  *Deckers Outdoor Corporation v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *8 (C.D. Cal. 2015) (citing *Davis v. Metro Prods, Inc.*, 885 F.2d 515, 523 n.10 (9th Cir. 2989)).  Conclusory allegations that an individual

1   was the "active, moving, conscious force behind the [infringement]" are insufficient.

2   *Id.* at *8.  Rather, a plaintiff must plead specific facts demonstrating the "guiding

3   spirit" or "central force" qualifier.  *Id*.

4        Plaintiff has not alleged any facts demonstrating that Ms. Bunn was the

5   "guiding spirit" or "central force" behind MOIC's alleged infringement.

6   Specifically, the Complaint lacks sufficient allegations as to actual copying by Ms.

7   Bunn.  *United States v. Liu*, 731 F.3d 982, 991 (9th Cir. 2013) ("[E]ven when two

8   works are substantially similar with respect to protectable expression, if the

9   defendant did not copy as a factual matter, but instead independently created the

10  work at issue, then infringement liability must be denied.") (quoting *Airframe Sys.,*

11  *Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011)).  The Complaint

12  states that Plaintiff sent "MOIC concepts and designs for each of the four rooms."

13  [Complaint, ¶ 16.]  But, it contains no allegation stating that Ms. Bunn *herself*

14  received or ever saw the subject designs or that she personally copied them.

15  Accordingly, the copyright infringement allegations fail to state a claim.

16       Plaintiff's unjust enrichment and unfair competition claims are wholly

17  dependent on the same facts that purport to support the copyright claim, and they

18  must likewise be dismissed for failing to state a claim against Ms. Bunn personally.

19  **IV.   CONCLUSION**

20       Defendants respectfully request that each of Plaintiff's claims be dismissed

21  without leave to amend, as amendment would be futile.  *See, e.g.*, *Steckman v. Hart*

22  *Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general

23  rule that parties are allowed to amend their pleadings, it does not extend to cases in

24  which any amendment would be an exercise in futility or where the amended

25  complaint would also be subject to dismissal.").

26

27

28

1 | Dated:  October 9, 2018

2

Respectfully submitted,

3

SHEPPARD, MULLIN, RICHTER & HAMPTON
4 | LLP

5

6

By _____ /s/ Carlo F. Van den Bosch
7 | CARLO F. VAN DEN BOSCH
GAZAL POUR-MOEZZI
8 | Attorneys for Defendants
MARYELLIS BUNN
9 | 1AND8 INC., dba MUSEUM OF ICE
CREAM
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28