Connor Lynch (SBN 301538)
connor@lynchllp.com
Brian Lynch (SBN 292511)
brian@lynchllp.com
LYNCH LLP
4470 W. Sunset Blvd. No. 90096
Los Angeles, CA 90027
Phone: (949) 229-3141

Attorneys for Plaintiff Pretty in Plastic, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pretty in Plastic, Inc., | Case No. 2:18-cv-06091-GW (SKx) |
| Plaintiff, | |
| v. | Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint |
| Maryellis Bunn, et al. | Date:  November 8, 2018 |
| Defendants. | Time:  8:30 a.m. |
| | Crtrm.: 9D |
| | The Hon. George H. Wu |

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aurora World, Inc. v. Ty Inc.,*
  719 F. Supp 2d 1115 (C.D. Cal. 2009) ................................................................. 8

*Aurora World, Inc. v. Ty Inc.,*
  No. 09-cv-08463 (C.D. Cal. March 14, 2011) ...................................................... 9

*Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.,*
  742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010) .................................................... 15

*Croak v. Saatchi & Saatchi N. Am., Inc.,*
  174 F. Supp. 3d 829 (S.D.N.Y. 2016) ................................................................. 11

*Davis v. Metro Prods., Inc.,*
  885 F.2d 515 (9th Cir. 1989) ................................................................................ 15

*Employee Painters' Tr. Health & Welfare Fund v. Bessey,*
  2009 WL 3347588 (W.D. Wash. Oct. 15, 2009) ................................................. 14

*Eng v. Captain Blue Hen Comics,*
  No. 14-cv-3631, 2014 WL 2941280 (E.D.N.Y. June 30, 2014) .......................... 11

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ............................................................................................... 5

*Folkens v. Wyland Worldwide, LLC,*
  882 F.3d 768 (9th Cir. 2018) ................................................................................. 5

*Gerritsen v. Warner Bros. Entm't Inc.,*
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................................... 13

*Grosso v. Miramax Film Corp.,*
  383 F.3d 965 (9th Cir. 2004) ............................................................................... 12

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984) .................................................................................................. 4

*Lisa Frank, Inc. v. Orb Factory Ltd.,*
  2017 WL 6000477 (D. Ariz. Sept. 21, 2017) ................................................... 9, 10

*Metcalf v. Bochco,*
  294 F.3d 1069 (9th Cir. 2002) ............................................................................... 5

i

*Montz v. Pilgrim Films & Television, Inc.*,
  649 F.3d 975 (9th Cir. 2011) ..................................................................... 14

*Morgan Truck Body, LLC v. Fredrickson Distribution LLC*,
  2013 WL 4766331 (E.D. Pa. Sept. 5, 2013) .............................................. 15

*Parks School of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ....................................................................... 4

*Reece v. Island Treasures Art Gallery, Inc.*,
  468 F. Supp. 2d 1197 (D. Haw. 2006) ...................................................... 10

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ............................................................. 10, 11

*Saunders v. Superior Court*,
  33 Cal. Rptr. 2d 438 (Ct. App. 1994) ....................................................... 12

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ..................................................................... 13

*Silas v. Home Box Office, Inc.*,
  201 F. Supp. 3d 1158 (C.D. Cal. 2016) .................................................... 5, 7

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ........................................................ 12

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
  7 F.3d 1434 (9th Cir. 1993) ....................................................................... 13

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ....................................................................... 5

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
  108 F. Supp. 3d 816 (N.D. Cal. 2015) ...................................................... 15

*Wendt v. Host Int.*,
  125 F.3d 806 (9th Cir.1997) ...................................................................... 12

<u>Statutes</u>

17 U.S.C. § 301 ........................................................................................... 12

OPPOSITION TO MOTION TO DISMISS

# **TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. Statement of Facts ............................................................................................... 2

III. Argument ............................................................................................................ 4

    A.    Legal Standard on Motion to Dismiss ................................................... 4

    B.    The Complaint Plausibly Alleges Copyright Infringement ........................ 4

        1.    Defendants' Request for Judicial Notice to Establish Features Common to Unicorns Should Be Denied .................................................. 5

        2.    Defendants Copied at Least Twenty Distinct, Protectable Elements from Plaintiff's Work ............................................................ 7

        3.    Defendants' Cases All Concern Works Lacking the Degree of Similarity Present Between PIP's Work and Defendants' Work ................................. 10

    C.    Federal Law Does Not Preempt State-Law Claims Based on Defendants' Breach of the Confidential Relationship Between the Parties ................................. 12

    D.    The Complaint Properly Alleges Breach of Contract ............................... 13

    E.    Maryellis Bunn Is a Proper Defendant to All Causes of Action ................ 14

        1.    Maryellis Bunn Is a Proper Defendant to the Breach of Contract Action Because She Is a Party to the Agreement ............................................. 14

        2.    Maryellis Bunn Is a Proper Defendant in the Copyright Action Because She Personally Directed the Infringement ................................................. 15

IV. Conclusion............................................................................................................ 17

## I. Introduction

Defendants used Plaintiff's NDA-protected ideas and copyrighted expression, but they refuse to pay for what they used. Plaintiff brought this case to right that wrong.

In October 2016, Defendants Maryellis Bunn and 1AND8, Inc., better known as the Museum of Ice Cream ("MOIC")—a popular social-media-ready pop-up art exhibition—solicited design proposals from Plaintiff Pretty in Plastic, Inc. ("PIP")—a prominent Los Angeles creative company—for a rainbow sherbet room to use for MOIC in Los Angeles. On November 2, 2016, PIP told Defendant Bunn that she would need to sign a Non-Disclosure Agreement (the "NDA") before PIP would send any design proposals. After Defendant Bunn signed the NDA on November 3, 2016, PIP sent both Bunn and Bunn's associate PIP's design proposal for a Rainbow Sherbet Room featuring a distinct white unicorn with a spiraling gold horn. Defendants never paid for the design or reached any other agreement to use it, but about a year later they copied both the expression and the ideas in the proposal, using it in MOIC's San Francisco location.

Defendants now seek to avoid paying for the designs they used. They first argue the copyright claim is only about ideas. They are wrong: the copyright claim is about copied expression, as detailed below on pages 4 and 7–10.

Defendants next claim the NDA they signed does not protect PIP's ideas because unicorns were publicly available before Defendants disclosed PIP's idea and passed it off as their own creative work. Defendants ignore not just the many similarities in expression, but also the fundamental purpose of the NDA itself: to go beyond the Copyright Act's protection and to the ideas and information embodied in the design proposal. Defendants point to no public instance of PIP's distinct unicorn in a rainbow room of an ice-cream-themed museum before the copying, let alone an instance alleged by the Complaint, but still insist the ideas embodied in the design proposal were publicly available. In effect, they ask the Court to ignore the Complaint's allegations to find no breach as a matter of law.

On unjust enrichment and unfair competition, Defendants ask for dismissal on preemption grounds because, they argue, each claim is based only on acts of copyright

infringement. Each claim, however, is grounded in the tort of breach of confidential relationship, and the Ninth Circuit has found the Copyright Act does not preempt such claims.

Finally, Defendants ask the Court in the alternative to dismiss Defendant Bunn because, they argue, the Complaint fails to allege she was bound by the NDA (the basis of PIP's contract claim) and fails to allege she received the design proposal at issue (the basis of PIP's copyright claim). In fact, the Complaint alleges, in detail, both of these facts. Compl. ¶¶ 11–18, 26–27, 46–51.

Defendants' arguments, if accepted, would allow them to unfairly profit from the copyrighted and NDA-protected work of PIP—and encourage them to do the same to other artists—with impunity. This Court should reject this scheme and deny Defendants' motion to dismiss in its entirety.

## II. Statement of Facts

The dispute in this case began in late September 2016, when Defendant MOIC, through an employee, first reached out to PIP to about PIP's potential involvement in MOIC's Los Angeles location. Compl. ¶ 11. The conversation between MOIC and PIP continued into October 2016, when Defendant Bunn personally requested a design proposal for a rainbow sherbet room. Compl. ¶ 12. Before PIP would send Defendant Bunn any design proposals, PIP required Bunn and MOIC to sign an NDA. Compl. ¶ 14. After receiving the signed copy of the NDA, PIP sent, directly to Defendant Bunn and MOIC, the design proposals, including a design for a unicorn in MOIC's rainbow sherbet room. Compl. ¶ 16.

PIP and Defendants never reached any agreement for Defendants' use of the design proposals. Compl. ¶ 18.

About a year after Defendant Bunn received PIP's design proposals, PIP discovered that Defendant Bunn and MOIC had copied PIP's design proposal for a rainbow room with a unicorn for an MOIC location. Compl. ¶ 21. Not just the ideas, but the expression, too. The result is the following:




**Plaintiff PIP's Design Proposal**          **Defendants' Rainbow Room**

The list of similarities is extensive:

(1)   both the unicorn in PIP's design proposal and Defendants' rainbow room are approximately the same angle to the back wall of the room and face stage left;

(2)   both unicorns have relatively realistic equine bodies;

(3)   both unicorns are standing mid-walking stride with opposite pairs of hooves matching (the hooves on one side are both nearer to the center than the hooves on the other);

(4)   both unicorns are depicted with their weight on their front legs;

(5)   both unicorns are looking slightly away from the forward front leg;

(6)   both unicorns have a relaxed tail hanging from the dock;

(7)   both unicorns' ears are up;

(8)   both unicorns' manes fall to the same side (the side with the front leg back), and the manes fall close to the neck with no partition (i.e., a portion of the mane does not fall to the opposite side);

(9)   both unicorns appear to lack forelocks entirely (the piece of the mane on a horse that falls down the forehead);

(10)   both unicorns have a shiny gold horn that spirals the entire length of the horn, with a similar helix angle in both horns;

(11)   both unicorns' horn length is similarly proportioned to the size of each unicorn's neck (and relatively the same length);

(12)   both unicorns have a relatively flat back with low withers;

(13)   both unicorns have strong chest muscles with flexed biceps and triceps;

(14)   both unicorns have strong masseter muscles in the cheek;

(15)   both unicorns have a similar shoulder slope (the highest point of the wither to the shoulder point to the elbow point);

(16)   both unicorns have a relatively long neck;

(17)   both unicorns have a relatively large head;

(18)   both unicorns are illuminated from above to cast shadows under the unicorn body;

(19)   both unicorns are a semi-gloss white; and

(20)   both unicorns have monochromatic bodies (including parts that, if on a horse, would ordinarily have color, such as the hooves, eyes, and nose).

## III. Argument

As explained below, PIP has properly pleaded copyright infringement, breach of contract, unjust enrichment, and unfair competition against both Defendant Bunn and Defendant MOIC in conformity with FRCP 8.

### A.   Legal Standard on Motion to Dismiss

On motion to dismiss, a court must take all allegations of material fact in the complaint as true and construe them in the light most favorable to the nonmoving party. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is not appropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). As explained below, each of Defendants' arguments requires the Court to ignore this standard and instead construe facts and allegations against PIP.

### B.   The Complaint Plausibly Alleges Copyright Infringement

A plaintiff bringing a claim for copyright infringement must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

4

*Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). PIP has done so.

Defendants do not contest that PIP owns a valid copyright; instead, they argue that Defendants' copying does not rise to the level of copyright infringement. In the Ninth Circuit, that determination requires an extrinsic test—for the court—and an intrinsic test—for the jury. *Metcalf v. Bochco*, 294 F.3d 1069, 1073 (9th Cir. 2002). On summary judgment or a motion to dismiss, only the extrinsic test is relevant. *See id.*

Ordinarily, extrinsic similarity is addressed at summary judgment, and even then, "[s]ummary judgment is 'not highly favored' on questions of substantial similarity." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018). This may be partly because the "extrinsic test requires 'analytical dissection of a work and expert testimony.'" *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

Before addressing extrinsic similarity, Defendants first ask the Court to judicially notice that unicorns—mythological creatures—are white with gold horns. Defs.' Req. for Judicial Notice, Dkt. 18. They then improperly conclude that nothing but horn and body color were copied between PIP's and Defendants' work. As a threshold matter, Defendants' request for judicial notice should be denied. The wide range of depictions of mythological equines in Defendants' motion and request for judicial notice only emphasize wide range of depictions for a mythological equine (e.g., they are <u>not</u> all white) and the strong similarity in protectable features between Plaintiff's and Defendants' work. And even if the Defendants' request for judicial notice is granted, dismissal would still not be appropriate because far more than just the horn and body color were copied by Defendants.

### 1.    Defendants' Request for Judicial Notice to Establish Features Common to Unicorns Should Be Denied

Defendants' request for judicial notice (Dkt. 18) that unicorns are commonly depicted as white should be denied because it is subject to reasonable dispute and is not "generally known." *See Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1170 (C.D. Cal. 2016).

Judicial notice isn't appropriate here because Defendants are asking the Court to notice much more than the fact of the definitions themselves; Defendants ask the Court to

judicially notice the "facts contained in" the definitions, i.e., that unicorns are white. Dkt. 18. They then rely on facts *not* contained in the definitions, such as their description of this example picture as including a "gold" horn (Dkt. 17 at 10):



The depicted horn may include gold, but the horn itself fundamentally differs in expression from the gold horn common to both PIP's and Defendants' work. While the unicorn depicted is "white," it's a warmer, creamier white, strikingly different from the stark absolute white of the unicorns depicted in PIP's and Defendants' work.

Even the definitions presented by Defendants inconsistently describe the various features of a unicorn. For example, Defendants' *Britannica* definition describes a unicorn as having "a white body, purple head, and blue eyes, and on its forehead [is] a cubit-long horn coloured red at the pointed tip, black in the middle, and white at the base." Exhibit B, Dkt. 18-2. Defendant's *Merriam Webster* definition, on the other hand, describes a unicorn as a "usually white animal generally depicted with the body and head of a horse with long flowing mane and tail and a single often spiraled horn in the middle of the forehead." Exhibit A, Dkt. 18-1. Defendants' Exhibit A also includes various images of unicorns, all of which depict unicorns with different, distinguishable features. Far from introducing consistent features for a unicorn, Defendants' request for judicial notice establishes, if anything, that unicorns can—and are— portrayed diversely with a wide range of features.

Further, the dictionaries' acontextual definitions do not establish the ultimate fact of what elements are common to unicorns in pop-up art installations. Because the specific color of unicorns is not readily ascertainable through consultation of unquestionable sources, judicial notice should be denied. *See Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1170

(C.D. Cal. 2016) (denying judicial notice with respect to elements common to prior works).

### 2.   Defendants Copied at Least Twenty Distinct, Protectable Elements from Plaintiff's Work

Regardless of whether the color of unicorns is judicially noticed, the copied expression goes far beyond the inclusion of the same color white, as is apparent from examination of the works:

   

**Plaintiff PIP's Design Proposal**        **Defendants' Rainbow Room**

At least twenty distinct protectable elements are similar between the works, and Defendants' motion addresses almost none of them:

    (1)   both the unicorn in PIP's design proposal and Defendants' rainbow room are approximately the same angle to the back wall of the room and face stage left;

    (2)   both unicorns have relatively realistic equine bodies;

    (3)   both unicorns are standing mid-walking stride with opposite pairs of hooves matching (the hooves on one side are both nearer to the center than the hooves on the other);

    (4)   both unicorns are depicted with their weight on their front legs;

    (5)   both unicorns are looking slightly away from the forward front leg;

    (6)   both unicorns have a relaxed tail hanging from the dock;

    (7)   both unicorns' ears are up;

    (8)   both unicorns' manes fall to the same side (the side with the front leg back), and the manes fall close to the neck with no partition (i.e. a portion of the

mane does not fall to the opposite side);

(9)     both unicorns appear to lack forelocks entirely (the piece of the mane on a horse that falls down the forehead);

(10)    both unicorns have a shiny gold horn that spirals the entire length of the horn, with a similar helix angle in both horns;

(11)    both unicorns' horn length is similarly proportioned to the size of each unicorn's neck (and relatively the same length);

(12)    both unicorns have a relatively flat back with low withers;

(13)    both unicorns have strong chest muscles with flexed biceps and triceps;

(14)    both unicorns have strong masseter muscles in the cheek;

(15)    both unicorns have a similar shoulder slope (the highest point of the wither to the shoulder point to the elbow point);

(16)    both unicorns have a relatively long neck;

(17)    both unicorns have a relatively large head;

(18)    both unicorns are illuminated from above to cast shadows under the unicorn body;

(19)    both unicorns are a semi-gloss white; and

(20)    both unicorns have monochromatic bodies (including parts that, if on a horse, would ordinarily have color, such as the hooves, eyes, and nose).

Similar elements have been found protectable in other cases, including in the same cases Defendants cite. For example, Defendants cite *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp 2d 1115, 1136 (C.D. Cal. 2009) to argue elements of PIP's work are unprotectable. Dkt. 17 at 9, 12. They cite a denial of plaintiff Aurora's motion for preliminary injunction for want of extrinsic similarity between its plush toys and defendant's. *Id.* But when the same court later reached extrinsic similarity on summary judgment, it found issues of triable fact on the same plush toys: "Aurora has adduced sufficient evidence to raise triable issues of fact regarding substantial similarity under the extrinsic test." *Aurora World, Inc. v. Ty Inc.*, Case No. 09-cv-

8

08463, 2011 WL 13176413 at *18 (C.D. Cal. March 14, 2011). The court even cited color of the toys as among the protectable elements: "Ty's Cleo toys [] have the same off-white color, gray markings on the hands, feet, and face, blue and gray striped tails, and light blue ring around the eyes as do Aurora's copyrighted YooHoo toys." *Id.* Here, the elements Plaintiff has identified are protectable and sufficient to satisfy the extrinsic similarity test.

Far less similarity has been found sufficient to satisfy the extrinsic test in other cases. In *Lisa Frank, Inc. v. Orb Factory Ltd.*, 2017 WL 6000477 (D. Ariz. Sept. 21, 2017), for example, the court denied summary judgment to defendants on issues of extrinsic similarity between two unicorns, which are reproduced below:

    

**Defendant's Work**          **Plaintiff's Copyrighted Work**

While the court in *Lisa Frank* did not provide extensive analytical dissection of the two works, the comparison remains instructive. And the unicorns at issue in this case bear far more similarity than the unicorns at issue in *Lisa Frank*. The table below lists several features which differ in the works in *Lisa Frank* but are the same in the works at issue before the Court.

OPPOSITION TO MOTION TO DISMISS

| Unicorn Feature | *Lisa Frank* Plaintiff and Defendants' Works | PIP and Defendants' Works |
|---|---|---|
| Horn Color | Different—D's yellow, speckled, P's rainbow | Same |
| Horn Style | Different—D's speckled, P's spiraled | Same |
| Horn Size | Different—D's short, P's long | Same |
| Mane Style | Different—D's split, P's one sided | Same |
| Mane Color | Different—D's orange, pink, red; P's rainbow | Same |
| Body style | Different—D's cartoonish, P's more realistic | Same |
| Face style | Different—D's cartoonish, P's more realistic | Same |
| Hoof color | Different—D's red, P's rainbow | Same |
| Tail color | Different—D's orange, pink, red; P's rainbow | Same |

Despite these differences, the court in *Lisa Frank* denied summary judgment to defendants and let the case proceed to trial. *Id.* at *11. Unlike the *Lisa Frank* unicorns, those in this case have same horn color (gold), same horn style (spiraling with the about same helix angle), same horn size (long, proportionate to neck length), same mane style (not split), same mane color (white), same body style (realistic, with many similar details), same face style (realistic, also with many similar details), same hoof color (white), and same tail color (white). Given how many more similarities the works in this case have to each other than the works at issue in *Lisa Frank*, the Court should deny Defendants' motion to dismiss on extrinsic similarity.

### 3. Defendants' Cases All Concern Works Lacking the Degree of Similarity Present Between PIP's Work and Defendants' Work

Ignoring the many similarities between PIP's design proposal and Defendants' work, Defendants focus instead on cases where the works comparatively lacked similarity or otherwise similar elements were readily filtered out. They cite *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) and *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1207-08 (D. Haw. 2006), which both stand for the uncontroversial proposition that photographers of real-life subjects do not own the real-life people and things their work depicts. With photographs, unlike other forms of artwork, none of the creative choices of the photographer "is subject to copyright protection when viewed in isolation." *Rentmeester*,

883 F.3d at 1119. The courts in *Rentmeester* and *Reece* were thus readily able to filter out unprotectable elements that flowed naturally from the unprotectable real human subject.

Here, by contrast, Plaintiff's design proposal and Defendants' work are depictions of unicorns—not a specific real-life person—and thus the depictions do not flow naturally from unprotectable human subjects. While the Court may deem expert testimony helpful to adduce the full range of creative choices available for depicting unicorns, the allegations in the Complaint should suffice at this stage.

Defendants also analogize to *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829 (S.D.N.Y. 2016), which depicts dissimilar mythological creatures (one, a Pegasus based on the anatomy of a real horse, and the other, a cartoonish winged unicorn) when compared to the similarity present in this case. *Croak*, if anything, demonstrates only that Defendants had a wide range of creative choices for mythological equines to pick among before they chose Plaintiff's depiction of a unicorn:





**Plaintiff's Work—a Pegasus**

**Defendant's Work—a cartoonish winged unicorn**

Defendants also cite *Eng v. Captain Blue Hen Comics*, No. 14-cv-3631, 2014 WL 2941280, at *3 (E.D.N.Y. June 30, 2014), in which the court *sua sponte* dismissed the

complaint of a pro se litigant where the <u>only</u> alleged similarity between comic book works was the presence of an anthropomorphic unicorn with blonde hair wearing sunglasses. In this case, by contrast, the two works at issue feature dramatically more similarities.

Taken together, the materials and cases Defendants cite establish a wide range of creative options for mythological equines and actually sharpen the many similarities between PIP's work and Defendants'. Because the two works at issue here satisfy the extrinsic test on the allegations now before the Court, Defendants' motion to dismiss should be denied.

### C. Federal Law Does Not Preempt State-Law Claims Based on Defendants' Breach of the Confidential Relationship Between the Parties

Claims under state law are preempted by the Copyright Act where: (1) the conduct at issue comes within the subject matter of copyright, and (2) the state law rights are equivalent to any of the exclusive rights within the general scope of copyright. 17 U.S.C. § 301. *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004). "[C]laims are not preempted by the federal copyright statute so long as they 'contain elements . . . that are different in kind from copyright infringement.'" *Wendt v. Host Int.*, 125 F.3d 806, 810 (9th Cir.1997).

Unfair competition under California law may be predicated on any unlawful practice, whether it violates criminal, federal, state, or municipal, statutory, regulatory, or court-made law. *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "[A] plaintiff may bring a[n] [unfair competition law] claim even where it overlaps with a concurrently brought breach of contract and breach of the implied covenant of good faith and fair dealing claim." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015).

Here, PIP's state-law claims are grounded in the breach of the confidential relationship between the Parties. Compl. ¶ 24–27; Compl. ¶ 59. The tort of breach of confidential relationship occurs when "an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990). State-law claims based

on such a breach of a confidential relationship are not preempted by the Copyright Act because they require an extra element—a confidential relationship—beyond a copyright claim. *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1441 (9th Cir. 1993) ("In *Self Directed*, 908 F.2d at 467, the extra element [preventing preemption] was an alleged breach of a confidential relationship."). Thus, the Court should deny Defendants' motion to dismiss these claims as preempted by federal law.

### D.   The Complaint Properly Alleges Breach of Contract

To state a claim for breach of contract, a plaintiff must plead (1) existence of a contract; (2) the party's performance or an excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015). Defendants here argue only lack of breach because, they contend, unicorns were generally known before Defendants unveiled the rainbow room unicorn.

Like Defendants' arguments on copyright infringement, their arguments on breach of contract both mischaracterize PIP's claims and ignore the many similarities between PIP's detailed design proposal and their own rainbow room.

But, even if instead of a detailed design proposal, Plaintiffs had provided just a short, simple email that said, "We propose a unicorn in the rainbow room for the Museum of Ice Cream," that would still qualify as Confidential Information under the NDA subject to non-disclosure under the facts alleged in the Complaint, and this cause of action would still be adequately pleaded and survive Defendants' challenge because nowhere have Defendants pointed to another ice-cream themed museum that had a unicorn in its rainbow room before Defendants.

If Defendants object that this restricts their use of ideas they would otherwise be free to use, then they should not sign NDAs that are intended to prevent theft of ideas. Indeed, protection for the ideas in a design proposal is one of the fundamental reasons that artists insist on NDAs before sending design proposals.

Courts have repeatedly recognized the important role contracts play in protecting ideas the Copyright Act does not protect: "[c]ontract law, whether through express or

13

1  implied-in-fact contracts, is the most significant remaining state-law protection for literary or

2  artistic ideas." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 981 (9th Cir. 2011).

3  "Without such legal protection, potentially valuable creative sources would be left with very

4  little protection in a dog-eat-dog business." *Id.*

5       Defendants seek to undo that protection and ask the Court to hold that the contract

6  Plaintiff seeks to enforce does not protect the ideas it was intended to protect. The Court

7  should reject Defendants' argument and deny dismissal of the contract action.

8       **E.    Maryellis Bunn Is a Proper Defendant to All Causes of Action**

9       Defendants ask that Defendant Bunn be dismissed in her personal capacity on both

10  the copyright and contract causes of action. Both arguments are premised on facts

11  contradicted by the Complaint's allegations, and Defendants' motion to dismiss Defendant

12  Bunn should be denied.

13       **1.    Maryellis Bunn Is a Proper Defendant to the Breach of Contract**
14            **Action Because She Is a Party to the Agreement**

15       The Complaint alleges breach of contract against both Defendant Bunn and MOIC.

16  Compl. ¶¶ 46–51. While Defendants claim the Complaint does not allege that both MOIC

17  and Defendant Bunn were bound by the contract, the Complaint alleges that "Defendants

18  entered into a contract entitled "NON-DISCLOSURE AGREEMENT" on November 3,

19  2016" and that "Defendants have breached the contract by, for example, using the design

20  proposals in a public exhibition at the San Francisco Museum of Ice Cream location." ¶¶

21  46–49. The contract itself binds the "Recipient," which was both Defendant Bunn, who

22  personally received the design proposals, and MOIC, which also received the design

23  proposals. *See* Dkt. No. 17–4; Compl. ¶¶ 11–18, 27.

24       In any event, corporate officers may be held to the terms of an agreement they have

25  personally signed in a variety of circumstances. *See, e.g.*, *Employee Painters' Tr. Health & Welfare*

26  *Fund v. Bessey*, 2009 WL 3347588, at *3 (W.D. Wash. Oct. 15, 2009) (upholding personal

27  liability provision against corporate-officer signatory of collective bargaining agreement);

28  *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015)

(upholding application of forum-selection clause to corporate-officer signatory in personal capacity). These circumstances rightly include non-disclosure agreements. In *Morgan Truck Body, LLC v. Fredrickson Distribution LLC*, 2013 WL 4766331 (E.D. Pa. Sept. 5, 2013), the court refused to dismiss a personal defendant who signed a non-disclosure agreement in his capacity as a corporate officer and was alleged to breach that agreement. *Id.* at *7. The court reasoned so because the contract directed the company to share information only with employees who agree to keep such information confidential and agree to be bound by the contract's terms as though parties. *Id.* The contract in this case contains similar provisions, *see* Dkt. No. 17–4 at Section 2, and the result should be the same: Defendant Bunn should be personally bound not to disclose the confidential materials she received under the non-disclosure agreement that she signed.

## 2. Maryellis Bunn Is a Proper Defendant in the Copyright Action Because She Personally Directed the Infringement

"Under Ninth Circuit precedent, 'a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" *Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010). Cases finding personal liability do typically find the defendant was the "guiding spirit" behind the wrongful conduct. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, n. 10 (9th Cir. 1989).

The Complaint alleges that Defendant Bunn personally received PIP's design proposals. *See, e.g.*, Compl. ¶¶ 11–18 (describing documents sent to "Defendants"), ¶ 27 ("she [Defendant Bunn] had solicited and received [the design proposals] only on condition of nondisclosure"). The Complaint also alleges that Defendant Bunn has declared under penalty of perjury that she "personally designed or supervised the creation of each signature room" in the MOIC, Compl. ¶ 27, that she told an interviewer the rainbow room was "[her] reaction to what's going on," Compl. ¶ 26, and that the design proposals in question were "actually copied," Compl. ¶ 27. The Complaint also alleges that Defendant Bunn is "co-founder and creative director" of MOIC. Compl. ¶ 8.  This is more than sufficient to

15

establish personal liability for copyright infringement, as Defendant Bunn occupies a similar supervisory role as the defendant CEO in *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010), who "personally selected [defendant] IPTV's programming" and "had been CEO of IPTV since its founding." In *Bangkok Broad.*, the court found the CEO liable for copyright infringement because he was the "guiding spirit" behind his company's infringing activities. *Id.* Here, Defendant Bunn is alleged to be that "guiding spirit."

Defendants claim the Complaint "contains no allegation stating that Defendant Bunn herself received or ever saw the subject designs or that she personally copied them," but the allegations of the Complaint plainly contradict this claim, as explained above, as do the reasonable inferences drawn from those allegations.

If the Court nevertheless construes the Complaint against PIP, leave to amend would be appropriate because PIP's records demonstrate that Defendant Bunn personally received the design proposals. Further, publicly available evidence indicates Ms. Bunn has posted images of the infringing rainbow room on her personal social media accounts.

**IV. Conclusion**

Defendants' Motion to Dismiss requires the Court to construe the Complaint against Plaintiff PIP and ignore at least twenty protectable elements that were copied between PIP's work and Defendants' work. Defendants ask the Court to construe a contract meant to protect ideas against PIP and find that it does not actually protect ideas. They ask the Court to ignore the confidential relationship they breached to find state-law claims preempted. And they finally ask the Court to ignore allegations in the Complaint that implicate Defendant Bunn personally. Defendants' arguments, if accepted, would allow them to unfairly profit from the copyrighted and NDA-protected work of PIP—and encourage them to do the same to other artists—with impunity.

For these and all of the foregoing reasons, PIP respectfully requests the Court deny Defendants' motion in its entirety.

DATED: October 16, 2018

Respectfully submitted,

LYNCH LLP

By     /s/ Connor Lynch
         Connor Lynch
         *Attorneys for Plaintiff*
         *Pretty in Plastic, Inc.*