1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2 |     Including Professional Corporations
CARLO F. VAN DEN BOSCH, Cal. Bar No. 185207
3 | cvandenbosch@sheppardmullin.com
GAZAL POUR-MOEZZI, Cal. Bar No. 285932
4 | gpour-moezzi@sheppardmullin.com
650 Town Center Drive, 4th Floor
5 | Costa Mesa, California 92626-1993
Telephone:  714.513.5100
6 | Facsimile:  714.513.5130

7 | Attorneys for Defendants
MARYELLIS BUNN, and
8 | 1AND8 INC., dba MUSEUM OF ICE
CREAM

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13 | PRETTY IN PLASTIC, INC., a
California corporation,

Case No. 2:18-cv-06091-GW (SKx)

14 |     Plaintiff,

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

15

16 |     v.

Date:   November 8, 2018
Time:   8:30 a.m.
Crtrm.:  9D

17 | MARYELLIS BUNN, an individual;
and 1AND8 INC., a Delaware
corporation dba MUSEUM OF ICE

18 | CREAM,

The Hon. George H. Wu

19 |     Defendants.

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................... 1

I.   DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS
     APPROPRIATE AND SHOULD BE GRANTED ........................................... 1

II.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS AS A
     MATTER OF LAW ...................................................................................... 3

     A.   The Protectable Elements Of The Parties' Works Differ Greatly ......... 3

     B.   Plaintiff Cites Distinguishable Cases And Incorrectly Asserts
          That Defendants' Cases Are Inapplicable.............................................. 6

III. PLAINTIFF'S UNJUST ENRICHMENT AND UNFAIR
     COMPETITION CLAIMS ARE NOT GROUNDED IN BREACH OF
     A "CONFIDENTIAL RELATIONSHIP" ...................................................... 8

IV.  THE NDA'S EXCLUSION PROVISION EXCLUDES THE IDEA OF
     A WHITE UNICORN FROM PROTECTION, THEREBY DOOMING
     PLAINTIFF'S BREACH OF CONTRACT CLAIM ...................................... 9

V.   MARYELLIS BUNN SHOULD BE DISMISSED FROM THIS
     ACTION ...................................................................................................... 10

VI.  CONCLUSION ............................................................................................ 11

1

2

## TABLE OF AUTHORITIES

3

Page(s)

4

Cases

5

*Aliotti v. R Dakin & Co.*
   831 F.2d 898 (9th Cir. 1987) ......................................................... 5, 7, 9

6

7

*Baby Buddies, Inc. v. Toys R Us, Inc.*
   611 F.3d 1308 (10th Cir. 2010) ................................................................... 3

8

*Country Kids 'N City Slicks, Inc. v. Sheen*
   77 F.3d 1280 (10th Cir. 1996) ..................................................................... 5

9

10

*Croak v. Saatchi & Saatchi N. Am., Inc.*
   174 F. Supp. 3d 829 (S.D.N.Y. 2016) ......................................................... 8

11

12

*Durham Indus., Inc. v. Tomy Corp.*
   630 F.2d 905 (2d Cir. 1980) ......................................................................... 5

13

14

*Fink v. Goodson-Todman Enters., Ltd.*
   9 Cal. App. 3d 996 (1970) ............................................................................ 9

15

16

*Folkens v. Wyland Worldwide, LLC*
   882 F.3d 768 (9th Cir. 2018) ....................................................................... 5

17

18

*George S. Chen Corp. v. Cadona Int'l, Inc.*
   266 Fed. App'x 523 (9th Cir. 2008) ............................................................ 5

19

20

*Gonzalez v. Guzman*
   2017 WL 5446087 (S.D. Cal. Nov. 14, 2017) ............................................ 2

21

22

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*
   446 F.2d 738 (9th Cir. 1971) ....................................................................... 7

23

24

*Kelomar, Inc. v. Kudlow*
   413 Fed. App'x 981 (9th Cir. 2011) .......................................................... 11

25

26

*Lisa Frank, Inc. v. Orb Factory Ltd.*
   2017 WL 6000477 (D. Ariz. Sept. 21, 2017) ......................................... 6, 7

27

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*
   724 F.2d 357 (2d Cir. 1983) ......................................................................... 5

28

*Mattel, Inc. v. MGA Entm't, Inc.*
   616 F.3d 904 (9th Cir. 2010) .................................................................. 7

*Morgan Truck Body, LLC v. Fredrickson Distribution LLC*
   2013 WL 4766331 (E.D. Pa. 2013) ...................................................... 10

*N. Am. Bear Co. v. Carson Pirie Scott & Co.*
   1991 WL 259031 (N.D. Ill. Nov. 27, 1991) ............................................ 5

*Petrov v. Herbert Research, Inc.*
   2015 WL 4508708 (W.D. Wash. July 24, 2015) ..................................... 2

*Phillips v. P.F. Chang's China Bistro, Inc.*
   2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) .......................................... 2

*Reece v. Island Treasures Art Gallery, Inc.*
   468 F. Supp. 2d 1197 (D. Haw. 2006) ............................................... 5, 7

*Rentmeester v. Nike, Inc.*
   883 F.3d 1111 (9th Cir. 2018) ................................................................ 7

*Rugg v. Johnson & Johnson*
   2018 WL 3023493 (N.D. Cal. June 18, 2018) ....................................... 2

*Satava v. Lowry*
   323 F.3d 805 (9th Cir. 2003) .............................................................. 4, 7

*Sexy Hair Concepts, LLC v. Conair Corp.*
   2013 WL 12119721 (C.D. Cal. Feb. 25, 2013) ...................................... 2

*Silas v. Home Box Office, Inc.*
   201 F. Supp. 3d 1158 (C.D. Cal. 2016) .............................................. 2, 3

*Singh v. Ashcroft*
   393 F.3d 903 (9th Cir. 2004) .................................................................. 2

*Star Patrol Enters., Inc. v. Saban Entm't Inc.*
   129 F.3d 127 (9th Cir. 1997) (unpublished table disposition) .............. 8

*Wavelength Film Co. v. Columbia Pictures Indus., Inc.*
   631 F. Supp. 305 (N.D. Ill. 1986) .......................................................... 3

*Zindel v. Fox Searchlight Pictures, Inc.*
   2018 WL 3601842 (C.D. Cal. July 23, 2018) ........................................ 7

SMRH:488151339.3                DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT

# I.   <u>INTRODUCTION</u>

By any measure, the parties' works are not substantially similar in protected expression, and Plaintiff's Opposition does little more than highlight the meritless nature of its claims.  Most of the similarities on which Plaintiff relies—e.g., that both unicorns have tails, ears, and spiraled horns—are inherent to the treatment of unicorns and thus unprotected by copyright law.  Other such purported "similarities," when viewed in the context of the works themselves, are in fact not similar at all.  Accordingly, Plaintiff cannot state a plausible claim for copyright infringement.

Similarly, Plaintiff incorrect asserts that its unjust enrichment and unfair competition claims are grounded in "breach of a confidential relationship," and thus not preempted by the Copyright Act.  However, Plaintiff has not alleged (and cannot do so) the existence of a confidential relationship that imposes fiduciary-like duties.  Plaintiff and MOIC had an arms-length transactional relationship, not a fiduciary one.  Plaintiff's claims are based solely on allegations regarding Defendants' unauthorized use of Plaintiff's copyrighted work.  As such, they are preempted by the Copyright Act.

Finally, Plaintiff strains credulity by effectively arguing that any use of a white unicorn necessarily breached the parties' NDA.  This, of course, cannot be, as the NDA explicitly excludes from protection all ideas that were publicly available.  That necessarily includes broad concepts that were already in vogue and ubiquitous in modern pop culture.

In sum, Plaintiff's claims fail and cannot be salvaged by amendment.  Accordingly, the Complaint should be dismissed with prejudice.

# II.   <u>DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS APPROPRIATE AND SHOULD BE GRANTED</u>

Defendants have submitted a Request for Judicial Notice of entries from the Merriam-Webster Dictionary and Encyclopedia Britannica which illustrate that

unicorns are commonly depicted with a white body and gold horn.  [*See* Docket No. 18.]  Plaintiff does not contend that these sources are unreliable.  Rather, Plaintiff argues that these sources may not be used to show that white bodies and gold horns are common to the depiction of unicorns, relying on this Court's opinion in *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1170 (C.D. Cal. 2016).

*Silas* is easily distinguished.  There, plaintiffs sued HBO for copyright infringement related to defendants' television series, *Ballers*.  *Id.* at 1164-67.  In connection with their motion to dismiss, defendants requested that the Court take judicial notice of elements common in earlier works about professional football players, including "movies, television shows, novels, and news articles."  *Id*. at 1169-70.  While ultimately granting defendants' motion to dismiss, the Court denied the request for judicial notice, noting that "Defendants cite no prior cases where a court has taken judicial notice of other works within a genre."  *Id*. at 1170.

Unlike the entertainment sources at issue in *Silas*, courts routinely have taken judicial notice of entries from the Encyclopedia Britannica and Merriam-Webster Dictionary.  *See, e.g.*, *Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004) (taking judicial notice of entry in Encyclopedia Britannica); *Petrov v. Herbert Research, Inc.*, No. 14-754, 2015 WL 4508708, at *4 (W.D. Wash. July 24, 2015) (same); *Sexy Hair Concepts, LLC v. Conair Corp.*, No. 12-cv-2218-CBM, 2013 WL 12119721, at *3 (C.D. Cal. Feb. 25, 2013) (taking judicial notice of definition of "sexy" from Merriam-Webster Dictionary); *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-344-RMW, 2015 WL 4694049, at *2 (N.D. Cal. Aug. 6, 2015) (taking judicial notice of Merriam-Webster Dictionary definition of "celiac disease"); *Rugg v. Johnson & Johnson*, No. 17-cv-5010-BLF, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (taking judicial notice of various dictionary definitions); *Gonzalez v. Guzman*, No. 17-cv-241-GPC, 2017 WL 5446087, at *3 n. 4 (S.D. Cal. Nov. 14, 2017) ("Dictionary definitions are a proper subject for judicial notice.").

Moreover, unlike *Silas*, here the proffered sources explicitly state that unicorns are "usually white," and thus may be used to establish elements common to unicorns.  (*See, e.g.*, RJN at 6 (Merriam-Webster Dictionary, defining "unicorn" as "a mythical, usually white animal generally depicted with the body and head of a horse with long flowing mane and tail and a single often spiraled horn in the middle of the forehead") (emphasis added); RJN at 18 (Encyclopedia Britannica, referring to ancient Greek literature which originally described unicorns as having a "white body") (emphasis added).)  Accordingly, the Court should grant Defendants' Request for Judicial Notice.

However, even if the Court denies Defendants' Request for Judicial Notice, Plaintiff's copyright infringement claim still fails for lack of substantial similarity.  As set forth in Defendants' moving brief, the unicorns are expressed in strikingly different ways.  (Motion at 12:25-13:27.)  Naturally, both works share the colors white and gold, but this does not materially impact their overall lack of similarity.  *See, e.g.*, *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1318, 1317 n. 16 (10th Cir. 2010) (affirming finding of no substantial similarity despite similarities in color of both parties' teddy bears; noting "color by itself is not subject to copyright protection"; *Wavelength Film Co. v. Columbia Pictures Indus., Inc.*, 631 F. Supp. 305, 307 (N.D. Ill. 1986) (finding that both works' spaceships shared the same color but that this mere similarity was insufficient to constitute copyright infringement).

III.   **PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW**

   A.   **The Protectable Elements Of The Parties' Works Differ Greatly**

Plaintiff contends that it has properly stated a claim for copyright infringement because Defendants "copied at least twenty distinct, protectable elements from Plaintiff's work."  (Opposition at 7:2-3.)  In actuality, the elements

identified by Plaintiff overwhelmingly constitute <u>unprotectable</u> features that are inherent to the depiction of unicorns. [1]

For example, Plaintiff contends that the parties' unicorns both feature the following elements:

- have "relatively realistic equine bodies,"
- are "standing mid-walking stride,"
- are "depicted with their weight on their front legs,"
- have "a relaxed tail,"
- have "ears [that] are up,"
- have horns "that spiral[] the entire length of the horn,"
- have "relatively flat back[s],"
- have "strong chest muscles,"
- have "strong masseter muscles in the cheek,"
- have "a relatively long neck," and
- have "a relatively large head."

(*See* Opposition at 7:14-8:19.)

Essentially, Plaintiff argues that because both unicorns hold the same posture—e.g., mid-walking stride—and feature the same body parts—e.g., equine bodies, a relaxed tail, ears, horns—Plaintiff has alleged substantial similarity. Yet, these elements are <u>inherent</u> to the treatment of unicorns. As such, they are unprotectable and free for others to use. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("no copyright protection may be afforded to . . . elements of expression that naturally follow from the idea of [a glass-in-glass jellyfish

---

[1] Other elements identified by Plaintiff are, in fact, not shared between the works. For example, Plaintiff contends that both unicorns have "manes [that] fall to the same side" and are "looking slightly away from the forward front leg." (Opposition at 7:24-27) Yet, Plaintiff's unicorn does not possess a mane, and while Plaintiff's unicorn looks down towards the floor, MOIC's unicorn looks straight ahead.

sculpture]" including "jellyfish physiology"); *Aliotti v. R Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("Appellants therefore may place no reliance upon any similarity of expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals.  Thus, the intrinsic test is not satisfied merely because the Ding-A-Saurs and the Prehistoric Pets share similar postures and body designs."); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (finding that, even without evidence of dolphins in nature crossing "in the specific pose featured in both parties' works," the pose was not protectable); *George S. Chen Corp. v. Cadona Int'l, Inc.*, 266 Fed. App'x 523, 524 (9th Cir. 2008) (holding that an ornament of a dolphin with "an open mouth and an uplifted twisted tail" follows from the idea of a swimming dolphin and is not protectable); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1286 (10th Cir. 1996) ("to the extent that certain similarities between a copyrighted work and an allegedly infringing work are inherent in a nonprotectable idea—i.e., the general features of a doll—we must filter those similarities out of the comparison."); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) ("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in . . . a traditional fighting pose"); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 916-17 (2d Cir. 1980) (no infringement although dolls were "mechanically identical and structurally similar;" "all dolls attempting to express the same idea will of necessity display at least some similarity"); *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1207-09 (D. Haw. 2006) (finding no substantial similarity even though central figure of dancer was "remarkably similar" in position and proportions); *N. Am. Bear Co. v. Carson Pirie Scott & Co.*, No. 91-C-4550, 1991 WL 259031, at *4 (N.D. Ill. Nov. 27, 1991) ("The only features that appear similar to the ordinary observer—such as general size, shape, color and softness—are the

very same features that are so inherent in the abstract idea of a teddy bear that they are not subject to copyright protection.").

Once these "scenes a faire" are filtered out, it is clear that Plaintiff has failed to identify even a single element of protectable expression that is similar between the works. Indeed, the works differ dramatically in their protectable expression. (Motion at 12:25-13:27.) Accordingly, Plaintiff has failed to plausibly allege substantially similarity.

### B. Plaintiff Cites Distinguishable Cases And Incorrectly Asserts That Defendants' Cases Are Inapplicable

Plaintiff also contends that because *Lisa Frank, Inc. v. Orb Factory Ltd.*, 2017 WL 6000477 (D. Ariz. Sept. 21, 2017) involved copyright infringement of a unicorn and the court there denied summary judgment to defendants, the Court here should deny Defendants' motion. However, Plaintiff's reliance on *Lisa Frank* is misplaced. First, while the court concluded that there were triable issues of fact on the issue of substantial similarity, the court did not provide any substantive analysis on this issue. *Id.*, at *8-10. The court did not filter out the unprotectable elements of plaintiff's work, nor did it otherwise compare the two works under the Ninth Circuit's extrinsic test. *Id.* Rather than analyze the two works, the court denied summary judgment in conclusory fashion because "substantial similarity . . . is a highly disputed, factual issue typically requiring trial." *Id.*, at *10. The court also denied summary judgment because, under the inverse-ratio rule, the court reasoned that "a lesser showing of substantial similarity" was necessary in light of the "high degree of access." *Id.*

This case is inapplicable to the facts here for two critical reasons. First, unlike *Lisa Frank*, there are no "highly disputed, factual issues" precluding dismissal of Plaintiff's copyright infringement claim. Indeed, when the protectable elements of Plaintiff's unicorn are compared to MOIC's unicorn, it cannot be disputed that Plaintiff has failed to plausibly allege that the works are substantially

similar.  Second, the inverse-ratio rule, which the court relied on in *Lisa Frank*, has no bearing on this motion to dismiss.  Recent Ninth Circuit jurisprudence shows that the *Lisa Frank* court incorrectly applied the inverse-ratio rule, because evidence of access does not alter the level of similarity that must be shown.  *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1124 (9th Cir. 2018) ("[t]he showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown."); *Zindel v. Fox Searchlight Pictures, Inc.*, No. CV 18-1435 PA, 2018 WL 3601842, at *5 (C.D. Cal. July 23, 2018) ("The court agrees with Defendants that regardless of the level of access that Plaintiff alleges, the level of similarity that must be shown does not change.").

Ironically, rather than weaken Defendants' position, *Lisa Frank* actually strengthens it by underscoring that unicorns are commonly depicted with white bodies and gold horns.  (*See* Opposition at 9 (depiction of unicorns from *Lisa Frank*).)

Plaintiff's attempts to distinguish cases cited in Defendants' moving brief are equally unconvincing.  For example, Plaintiff argues that because *Rentmeester* and *Reece* involved photography of real-life subjects, courts are "readily able to filter out unprotectable elements that flowed naturally from the unprotectable real human subject," unlike the fanciful subjects underlying the works in this case.  (Opposition at 10:21-11:5.)  However, filtering out unprotectable elements is not unique to works depicting real-life subjects, as courts have routinely filtered out unprotectable elements from all types of works, including those involving non-human or fanciful subjects.  *See, e.g.*, *Satava*, 323 F.3d at 810-11 (filtering out unprotectable elements from glass jellyfish sculpture); *Aliotti*, 831 F.2d at 901-02 (filtering out unprotectable elements from stuffed dinosaur toys); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) (filtering out unprotectable elements from jeweled bee pin); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915-16 (9th Cir. 2010) (filtering out unprotectable elements from female dolls);

1  *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829, 835-36 (S.D.N.Y.

2  2016) (filtering out unprotectable elements from depiction of a Pegasus).

3       Just as courts have filtered out body parts and color selection from stuffed

4  animals and glass jellyfish sculptures, the Court here may filter out the many

5  unprotectable elements from Plaintiff's Work which are inherent to the treatment of

6  unicorns.  (*See* Motion at 8:14-12:23.)  Once these unprotectable elements are

7  filtered out, it is clear that Plaintiff cannot allege substantial similarity.

8  **IV.   PLAINTIFF'S UNJUST ENRICHMENT AND UNFAIR**
       **COMPETITION CLAIMS ARE NOT GROUNDED IN BREACH OF A**

9       **"CONFIDENTIAL RELATIONSHIP"**

10      Plaintiff also contends that its claims for unjust enrichment and unfair

11  competition survive preemption because they are grounded in "breach of the

12  confidential relationship between the parties."  (Opposition at 12.)  Again, Plaintiff

13  misconstrues the law.

14      Although Plaintiff contends these claims are based on "breach of a

15  confidential relationship," Plaintiff has failed to allege, and cannot allege, the

16  existence of a confidential relationship, for Plaintiff and MOIC had an arms-length

17  business relationship which "is insufficient to impose fiduciary-like duties that arise

18  from a confidential relationship."  *Star Patrol Enters., Inc. v. Saban Entm't Inc.*, 129

19  F.3d 127, 1997 WL 683327, at *2 (9th Cir. 1997) (unpublished table disposition);

20  *see also* 5 Nimmer on Copyright § 19D.02[A][2][a] ("When a [confidential]

21  relationship exists, the law imposes duties on defendant in the nature of a

22  fiduciary.").

23      Thus, contrary to Plaintiff's suggestion, its claims for unjust enrichment and

24  unfair competition are <u>not</u> grounded in breach of a confidential relationship.[2]

25  _____

26  [2]   Nor are Plaintiff's unjust enrichment and unfair competition claims grounded
       in a breach of confidence, which requires that plaintiff's submitted idea be

27      "novel."  *See, e.g.*, 5 Nimmer on Copyright § 19D.06 ("Novelty continues to

28      be a necessary element of breach of confidence and confidential relationship

Rather, these claims are based entirely on the unlawful use of Plaintiff's alleged copyrighted works, and thus, are preempted by the Copyright Act. (*See* Motion at 18:10-21:12.)

## V. THE NDA'S EXCLUSION PROVISION EXCLUDES THE IDEA OF A WHITE UNICORN FROM PROTECTION, THEREBY DOOMING PLAINTIFF'S BREACH OF CONTRACT CLAIM

Plaintiff's attempts to salvage its breach of contract claim also fail. Plaintiff contends that the NDA was intended to protect any and all information submitted to MOIC, regardless of whether that information was public knowledge. This interpretation completely ignores the exclusion provision of the NDA, which expressly excludes from protection any information which "was or becomes generally available to the public." [Doc. No. 17-4 at 3 (NDA, Section 3).]

Plaintiff is correct that Defendants were not free to use Plaintiff's submitted design proposal for the rainbow sherbet room, which contained numerous elements including light seafoam walls, a single rainbow, sherbet beanbags and a unicorn. [Complaint, ¶ 17.] However, Plaintiff has not alleged (nor can it) that Defendants used Plaintiff's design proposal, or even the exact white unicorn from the proposal. Rather, Plaintiff attempts to cast MOIC's use of a <u>very different</u> white unicorn as a breach of the NDA, despite the fact that the idea of a white unicorn was generally known by the public (if not a bona fide cultural fad) long before the parties entered into the NDA. (*See, e.g.*, RJN, Ex. A at 2 (Merriam-Webster Dictionary defining

_____

claims even in California"); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903 (9th Cir. 1987) ("To prevail on their claim for breach of confidence, appellants must show that they conveyed confidential and novel information . . ."; affirming summary judgment for defendants on breach of confidence claim); *Fink v. Goodson-Todman Enters., Ltd.*, 9 Cal. App. 3d 996, 1009 (1970) ("The right of plaintiff's work to protection by reason of sufficient novelty and elaboration of the accessible idea is a prerequisite . . . in the unjust enrichment-breach of confidence count."). Plaintiff has not alleged in the Complaint that its white unicorn is novel, nor can it, as the idea of a white unicorn, like the idea of a brown teddy bear, was common knowledge. (*See* Motion at 8:14-12:23, 21:13-23:7.)

unicorn as a "mythical, <u>usually white</u> animal . . .") (emphasis added).)  To interpret the NDA differently would effectively grant Plaintiff a monopoly over white unicorns vis a vis Defendants.

Because Plaintiff cannot plausibly allege breach of the NDA based on MOIC's use of a white unicorn, its breach of contract claim necessarily fails.

## VI.   <u>MARYELLIS BUNN SHOULD BE DISMISSED FROM THIS ACTION</u>

Finally, Plaintiff has failed to show that it has sufficiently alleged conduct attributable to Ms. Bunn in her personal capacity.  As such, Ms. Bunn should be dismissed from this action.

While Plaintiff has pointed to allegations in the Complaint regarding Ms. Bunn, all of these allegations pertain to activities Ms. Bunn took on behalf of MOIC.  The Complaint lacks allegations of any activity that Ms. Bunn undertook in her personal capacity.  Even those allegations highlighted in Plaintiff's Opposition are activities that Ms. Bunn took on behalf of MOIC, not in her personal capacity.

The Complaint alleges only one agreement as the basis for its breach of contract claim—the 2016 NDA between MOIC and Plaintiff.  That agreement facially states that "the Recipient has caused this Agreement to be executed by its duly authorized officer."  [Doc. No. 17-4 at 4.]  Its terms purport to place obligations only on MOIC as Plaintiff's "Vendor."  [*Id*. at 2.]  No language in the agreement purports to apply to or bind Ms. Bunn in a personal capacity that is separate from her status as a corporate officer.  [*See generally* Doc. No. 17-4.]

In support of the theory that Ms. Bunn agreed to be personally bound by the NDA, Plaintiff cites *Morgan Truck Body, LLC v. Fredrickson Distribution LLC*, No. 12-cv-6036, 2013 WL 4766331 (E.D. Pa. 2013).  But, the *Morgan Truck* NDA contained a key clause not present in the NDA here.  Specifically, that NDA stated that any corporate recipient of information covered by the NDA "<u>agree[d] to be bound</u> by the terms thereof to the same extent as if they were parties [t]hereto."  *Id*., at *3 (emphasis added).  The NDA here does not contain any similar provision.  To

the contrary, it references obligations undertaken by the company only.  As an agreement binding only Plaintiff and MOIC, the NDA does not confer obligations to Ms. Bunn in her personal capacity.  *Kelomar, Inc. v. Kudlow*, 413 Fed. App'x 981, 938 (9th Cir. 2011) ("Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually.").  Because Ms. Bunn did not undertake any responsibilities toward Plaintiff in her personal capacity, the breach of contract claim against her must be dismissed.

The copyright claim against Ms. Bunn also fails because it does not assert any specific facts demonstrating that she was personally the "guiding spirit" behind any alleged copying.  Attempting to salvage its claims against Ms. Bunn, Plaintiff points to interviews and alleged statements by MOIC and Ms. Bunn.  [*See* Complaint, ¶¶ 24-27.]  However, in these interviews, Ms. Bunn does not state that she received, reviewed, or copied Plaintiff's work.  To the contrary, the cited interviews state that MOIC's San Francisco Rainbow Room was an original concept designed by MOIC.  Plaintiff cannot use statements that MOIC's installation was an original design to plausibly allege exactly the opposite – that Ms. Bunn personally received, reviewed, and copied that design.

In sum, the Complaint does not include any allegations that Ms. Bunn personally received, reviewed, or copied any material from Plaintiff.  Its sparse (and in some places directly contradictory) assertions about Ms. Bunn's personal conduct, are legally insufficient to support a tort claim against her.  Therefore, Plaintiff's claim for copyright infringement against Ms. Bunn must be dismissed.  Plaintiff's attendant claims for unjust enrichment and unfair competition therefore also fail.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that each of Plaintiff's claims be dismissed without leave to amend.  Should the Court deny the

-11-

1 | dismissal of all of Plaintiff's claims, Ms. Bunn should be dismissed as a defendant

2 | in this action.

3 | Dated:  October 25, 2018

4 | Respectfully submitted,

5 |

6 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7 |

8 | By       /s/ Carlo F. Van den Bosch

9 | CARLO F. VAN DEN BOSCH

10 | GAZAL POUR-MOEZZI
Attorneys for Defendants

11 | MARYELLIS BUNN

12 | 1AND8 INC., dba MUSEUM OF ICE CREAM

SMRH:488151339.3 | DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT