1 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2   Including Professional Corporations
   CARLO F. VAN DEN BOSCH, Cal. Bar No. 185207
3 cvandenbosch@sheppardmullin.com
   GAZAL POUR-MOEZZI, Cal. Bar No. 285932
4 gpour-moezzi@sheppardmullin.com
   650 Town Center Drive, 4th Floor
5 Costa Mesa, California 92626-1993
   Telephone: 714.513.5100
6 Facsimile: 714.513.5130

7 Attorneys for Defendants
   MARYELLIS BUNN, and
8 1AND8 INC., dba MUSEUM OF ICE
   CREAM

9

10                    UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13 PRETTY IN PLASTIC, INC., a            Case No. 2:18-cv-06091-GW (SKx)
   California corporation,
14                                       **DEFENDANTS' NOTICE OF
                 Plaintiff,              MOTION AND MOTION TO
15                                       DISMISS FIRST AMENDED
          v.                             COMPLAINT**
16
   MARYELLIS BUNN, an individual;        Date:    January 24, 2019
17 and1AND8 INC., a Delaware             Time:    8:30 a.m.
   corporation dba MUSEUM OF ICE         Crtrm.:  9D
18 CREAM,
                                         The Hon. George H. Wu
19                 Defendants.

20

21

22

23

24

25

26

27

28

SMRH:488655283.3        DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FAC

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 24, 2019, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu, U.S. District Judge of the Central District of California, in Courtroom 9D of the United States Courthouse, 350 West 1st Street, Los Angeles, California, defendants Maryellis Bunn and 1AND8, Inc. dba Museum of Ice Cream ("MOIC") (collectively, "Defendants") will and hereby do move the Court for an order dismissing with prejudice the claims brought by plaintiff Pretty in Plastic, Inc. ("Plaintiff") in its First Amended Complaint for: (1) copyright infringement; (2) breach of contract; (3) unjust enrichment; and (4) unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* and California common law.  [Docket No. 24.] Plaintiff's claims for copyright infringement, unjust enrichment, and unfair competition fail to state a claim upon which relief may be granted and should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's claims for breach of contract, unjust enrichment, and unfair competition should also be dismissed against MOIC, as Plaintiff has failed to allege sufficient supporting facts concerning MOIC.

The parties met and conferred regarding the substance of this motion as required by Local Civil Rule 7-3, including by participating in a telephonic conference on December 6, 2018, during which the parties discussed Plaintiff's claims and the applicable law.  Plaintiff declined to withdraw or amend its claims. (*See* Declaration of Gazal Pour-Moezzi in Support of Motion to Dismiss FAC, ¶ 2.)

This Motion is based on this Notice and the Memorandum of Points and Authorities provided below, the Declaration of Gazal J. Pour-Moezzi in Support of Motion to Dismiss FAC, Request for Judicial Notice in Support of Motion to Dismiss FAC, the pleadings and papers on file, and any other matters as the Court may consider.

1   Dated:  December 13, 2018

2                           SHEPPARD, MULLIN, RICHTER & HAMPTON

3                           LLP

4                           By        /s/ Carlo F. Van den Bosch

5                                   CARLO F. VAN DEN BOSCH
                                    GAZAL POUR-MOEZZI
6                                   Attorneys for Defendants
7                                   MARYELLIS BUNN
                                    1AND8 INC., dba MUSEUM OF ICE
8                                   CREAM

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    The Parties And Their Prior Association ................................................. 2

    B.    MOIC Opens A Location In San Francisco ............................................ 3

    C.    Plaintiff Sues Defendants Because The MOIC Rainbow Room
        Includes A Unicorn ................................................................................. 4

    D.    The Court Dismissed Three Of Plaintiff's Claims With Leave To
        Amend ..................................................................................................... 4

    E.    Plaintiff Files Its FAC ........................................................................... 5

III.  THE FAC SHOULD BE DISMISSED ............................................................. 5

    A.    Legal Standard Applicable To Motion To Dismiss ................................ 5

    B.    Plaintiff Still Fails To State A Claim For Copyright Infringement ........ 6

        1.    The Works Are Not Substantially Similar As A Matter Of
            Law ............................................................................................... 7

            a.    Numerous Components Of Plaintiff's Work Are
                Unprotectable ................................................................... 7

            b.    After Filtering Out These Unprotectable Elements,
                Plaintiff's Unicorn Is Strikingly Different From
                MOIC's Unicorn .............................................................. 10

    C.    Plaintiff's Claim For Unjust Enrichment – Breach Of Confidence
        Fails ....................................................................................................... 14

    D.    Plaintiff's Claim For Unfair Competition Continues To Be
        Preempted By The Copyright Act ......................................................... 15

        1.    Plaintiff's Work Falls Within The Subject Matter Of
            Copyright ..................................................................................... 16

        2.    Plaintiff's Claim Is Equivalent To The Copyright Act ............. 16

    E.    Plaintiff's State Law Claims Against MOIC Fail ................................. 17

IV.   CONCLUSION ................................................................................................ 18

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Aliotti v. R. Dakin & Co.*
  831 F.2d 898 (9th Cir. 1987) ....................................................................7, 15, 18

5

6

*Apple Computer, Inc. v. Microsoft Corp.*
  35 F.3d 1435 (9th Cir. 1994) ...................................................................... 9

7

8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................... 5, 14

9

10

*Aurora World, Inc. v. Ty Inc.*
  719 F. Supp. 2d 1115 (C.D. Cal. 2009) ...................................................... 8

11

12

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................... 5

13

14

*Clemens v. Am. Warranty Corp.*
  193 Cal. App. 3d 444 (1987) ...................................................................... 18

15

16

*Croak v. Saatchi & Saatchi N. Am., Inc.*
  174 F. Supp. 3d 829 (S.D.N.Y. 2016) ........................................................ 13, 14

17

18

*Daniels-Hall v. Nat'l Educ. Ass'n.*
  629 F.3d 992 (9th Cir. 2010) ...................................................................... 6

19

*Del Madera Props. v. Rhodes & Gardner, Inc.*
  820 F.2d 973 (9th Cir. 1987) ...................................................................... 16

20

21

*Dielsi v. Falk*
  916 F. Supp. 985 (C.D. Cal. 1996) ............................................................. 16

22

23

*Downing v. Abercrombie & Fitch*
  265 F.3d 994 (9th Cir. 2001) ...................................................................... 15

24

25

*Epikhin v. Game Insight N. Am.*
  2015 U.S. Dist. LEXIS 66188 (N.D. Cal. May 20, 2015) .......................... 5

26

27

*Fink v. Goodson-Todman Enters., Ltd.*
  9 Cal. App. 3d 996 (1970) .......................................................................... 15

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FAC

*Firoozye v. Earthlink Network*
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) ........................................................ 15, 16

*Folkens v. Wyland Worldwide, LLC*
    882 F.3d 768 (9th Cir. 2018) ............................................................................ 7

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*
    462 F.3d 1072 (9th Cir. 2006) .......................................................................... 6

*Gallagher v. Lions Gate Entm't*
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) .............................................. 14

*Kodadek v. MTV Networks, Inc.*
    152 F.3d 1209 (9th Cir. 1998) ........................................................................ 16

*Laws v. Sony Music Entm't*
    448 F.3d 1134 (9th Cir. 2006) ........................................................................ 16

*Ledet v. Cal. Waste Solutions, Inc.*
    2013 WL 1120786 (N.D. Cal. Mar. 18, 2013) ................................................ 17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) .......................................................................... 5

*Mattel, Inc. v. MGA Entm't, Inc.*
    616 F.3d 904 (9th Cir. 2010) ............................................................................ 7

*Motown Record Corp. v. George Hormel & Co.*
    657 F. Supp. 1236 (C.D. Cal. 1987) ................................................................ 17

*Muromura v. Rubin Postaer and Associates*
    2014 WL 4627099 (C.D. Cal. Sept. 16, 2014) .................................................. 7

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ........................................................... 17

*Rentmeester v. Nike, Inc.*
    883 F.3d 1111 (9th Cir. 2018) ........................................................... 6, 12, 13, 14

*Satava v. Lowry*
    323 F.3d 805 (9th Cir. 2003) ............................................................... 7, 8, 9, 10

*Steckman v. Hart Brewing, Inc.*
    143 F.3d 1293 (9th Cir. 1998) ........................................................................ 18

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) .................................................................. 6

*Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*
    12 Cal. App. 4th 1354 (1993) .............................................................. 18

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981) .................................................................. 5

*Worth v. Universal Pictures, Inc.*
    5 F. Supp. 2d 816 (C.D. Cal. 1998) .................................................... 16

SMRH:488655283.3

Case No. 2:18-cv-06091-GW (SKx)
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Following a spirited hearing about the physical attributes of "all" unicorns, this Court dismissed three of Plaintiff's four claims with leave to amend.  And, following Plaintiff's half-hearted attempt at amendment, a cognizable legal claim remains as elusive as the gold-horned equine.

The amended complaint fails to allege plausible claims for copyright infringement, unjust enrichment, and unfair competition.  Plaintiff has amended its copyright claim simply by alleging, in a single added paragraph, that the parties' unicorns are similar because they are (1) full-bodied unicorns, (2) white, (3) monochromatic, and (4) possess a golden horn.  Yet, the Court already has examined these elements, finding them standard features commonly associated with unicorns.  After two opportunities, it is clear that Plaintiff cannot plausibly allege that the works are substantially similar in any *protected* elements.

Plaintiff also has failed to salvage its claim for unjust enrichment.  Although Plaintiff now alleges that this claim is based upon a "breach of confidence," as a matter of law, Plaintiff cannot allege a crucial element of this claim, specifically, that its proffered idea (*i.e.*, a white unicorn) was novel.

Similarly, Plaintiff has failed to add any factual allegations to its unfair competition claim, which remains grounded in the alleged unauthorized use of Plaintiff's design proposal.  As this Court previously determined, this type of claim is preempted by the Copyright Act.

Finally, Plaintiff has failed to state an actionable claim for breach of contract against MOIC because MOIC was not a signatory to the NDA.  It is well established that a plaintiff may not assert a claim for breach of contract against a non-signatory.

Despite two chances to plead plausible claims in this action, it is clear that Plaintiff is unable to salvage its claims.  Accordingly, they must now be dismissed without leave to amend.

## II.   FACTUAL BACKGROUND

### A.   The Parties And Their Prior Association

MOIC, which was co-founded by defendant Maryellis Bunn, is an interactive "pop-up" art exhibit which features brightly colored rooms designed around a central ice cream theme.  [First Amended Complaint ("FAC"), ¶¶ 8, 10.]  MOIC opened its first location in 2016 in New York City, and has since launched exhibits in Los Angeles and San Francisco.  [*Id.*, ¶¶ 8, 11, 19.]  MOIC has achieved significant success and publicity, being dubbed "one of the most Instagrammed spaces in the country" and having been visited by celebrities like Beyonce, Kim Kardashian, and Drew Barrymore.   [FAC, ¶ 30]; (Declaration of Gazal Pour-Moezzi in Support of Motion to Dismiss FAC ("Pour-Moezzi Decl."), ¶ 3, Ex. A).

To create its ice cream themed rooms, MOIC sometimes works with other artists.  [*See* FAC, ¶ 11.]  In 2016, MOIC decided to include a rainbow themed room in a future project.  [*See id.*, ¶ 12.]  Subsequently, Pretty in Plastic, Inc. ("Plaintiff") submitted a bid for several designs, including a "rainbow sherbet" room.  [*Id.*, ¶ 12.]  Plaintiff requested that Ms. Bunn sign an NDA prior to sharing its proposal.  [*Id.*, ¶ 14.]  Ms. Bunn signed the NDA and returned it to Plaintiff on November 3, 2016.  [*Id.*]  MOIC did not sign the NDA, nor is MOIC mentioned in the NDA.  (Pour-Moezzi Decl., ¶ 4, Ex. B.)  In November 2016, Plaintiff submitted its proposals, including one for the rainbow themed room, as illustrated below ("Plaintiff's Work").  [FAC, ¶¶ 16-17.]



Ultimately, Ms. Bunn did not agree to use any of Plaintiff's proposals, including the one shown above.  [*Id.*, ¶ 18.]

## B.   <u>MOIC Opens A Location In San Francisco</u>

In September 2017, MOIC opened a pop-up exhibit in San Francisco, which featured, among other rooms, a rainbow themed room, as illustrated below (the "MOIC Rainbow Room").  (*See* Pour-Moezzi Decl., ¶ 5, Ex. C.)



**C.  Plaintiff Sues Defendants Because The MOIC Rainbow Room Includes A Unicorn**

On July 13, 2018, nearly one year after MOIC opened its San Francisco location, Plaintiff filed this action against MOIC and Ms. Bunn, asserting claims for (1) copyright infringement, (2) breach of contract, (3) unjust enrichment, and (4) unfair competition.  [*See generally* Doc. No. 1.]

**D.  The Court Dismissed Three Of Plaintiff's Claims With Leave To Amend**

On November 8, 2018, the Court dismissed, with leave to amend, Plaintiff's copyright infringement, unjust enrichment, and unfair competition claims.  [Doc. No. 23 (the "Order").]

For the copyright claim, the Court assessed "whether the Plaintiff's color scheme of a monochromatic white body and gold horn is protectable."  [*Id.*]   The Court concluded that "a white unicorn is a common enough trope that the Court would not find that aspect of Plaintiff's work to be protectable."  [*Id.*]  Similarly, the Court found that "a golden horn . . . is a pretty standard feature of depictions of unicorns and would not find it protectable."  [*Id.*]  The Court even noted that it "would not be persuaded by the monochromatic aspect [of Plaintiff's work] either." [*Id.*]  Ultimately, the Court dismissed the copyright claim because Plaintiff "fail[ed] to demonstrate infringement of protectable aspects of its work."  [*Id.* at 9.]

The Court also dismissed Plaintiff's claims for unjust enrichment and unfair competition, finding that the Copyright Act preempted these claims.  [*Id.* at 10-11.] The Court disagreed with Plaintiff that these claims were based on breach of a confidential relationship because handing over information in confidence does not, by itself, create a "confidential relationship."  [*Id.*]

Although these claims were dismissed, the Court granted Plaintiff leave to file an amended complaint.  [*Id.* at 12.]

### E.     Plaintiff Files Its FAC

Plaintiff filed its FAC on November 29, 2018, attempting to cure the defects addressed by the Court's Order.  [Doc. No. 24 ("FAC").]

The FAC contains only a single new allegation pertaining to Plaintiff's copyright infringement claim, specifically paragraph 42, which states:

> The selection and arrangement of a full-bodied, monochromatic, semi-gloss white unicorn with approximately eight visible spirals on a long, shiny gold horn, as depicted in the Pretty in Plastic Rainbow Sherbet Room Design Proposal, is an original depiction of a unicorn.  The combination of these elements is original and had never been publicly disclosed before Defendants copied this combination of elements, including in the San Francisco location of the MOIC.

[FAC, ¶ 42.]

The FAC also adds several new allegations to Plaintiff's unjust enrichment claim, in an attempt to ground this claim in a "breach of confidence."  [*See* FAC, ¶¶ 54, 56-62.]

## III.     THE FAC SHOULD BE DISMISSED

### A.     Legal Standard Applicable To Motion To Dismiss

A motion to dismiss should be granted when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a complaint must plead sufficient facts from which a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For purposes of ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts, however, need not "assume the truth of legal conclusions . . . cast in the form of factual allegations, *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), or accept as true allegations contradicted by judicially-noticeable facts, *Epikhin v. Game Insight N. Am.*, 2015 U.S. Dist. LEXIS 66188, at *10-11 (N.D. Cal. May 20, 2015).

Although Rule 12(b)(6) motions are generally limited to the allegations in the complaint, courts "may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (citations and internal quotation marks omitted). A court may also consider "matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B.   Plaintiff Still Fails To State A Claim For Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). For this second element, a plaintiff must allege facts that demonstrate "unlawful appropriation, that is, *illicit* copying . . . because copyright law does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). Indeed, "a defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work." *Id.* Rather, "[t]o infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'" *Id.*

To determine whether two works are substantially similar, courts employ "a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.'" *Id.* at 1118. The extrinsic test—the only test relevant to a motion to dismiss—"assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.* "Before that comparison can be made, the court must 'filter out' the unprotectable elements of the plaintiff's work— primarily ideas and concepts, material in the public domain, and *scenes a faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.* Thus, "[t]he key question always is: Are the works

substantially similar beyond the fact that they depict the same idea?"  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010) (emphasis added).

## 1.   The Works Are Not Substantially Similar As A Matter Of Law

Plaintiff's amended claim for copyright infringement rests on the allegation that Plaintiff's and MOIC's unicorns share the following elements: (i) they are "full-bodied;" (ii) "monochromatic," (iii) "semi-gloss white," and (iv) have "approximately eight visible spirals on a long, shiny gold horn."  [FAC, ¶ 42.] However, the Court already has concluded that *none* of these elements are protectable.  Indeed, after filtering out these unprotectable elements from Plaintiff's Work, the remaining elements are strikingly different from those present in MOIC's unicorn.

### a.   Numerous Components Of Plaintiff's Work Are Unprotectable

Before comparing the two works for substantial similarity, the Court must first "filter out and disregard the nonprotectable elements" of Plaintiff's Work, including all "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea."  *Muromura v. Rubin Postaer and Associates*, No. CV 12-9263 DDP, 2014 WL 4627099, at *2 (C.D. Cal. Sept. 16, 2014).

Of course, Plaintiff does not have a monopoly on all depictions of a unicorn, as this *idea* is "within the common heritage of humankind," and thus free for others to use.  *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003) (copyright protection does not extend to idea of jellyfish sculpture, nor natural features of jellyfish such as bright colors, tendril-like tentacles, and rounded bells); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (anyone is free to create work based on the idea of two dolphins crossing under sea); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901-02 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily

1    follow from the idea of such dolls . . . . Appellants therefore may place no reliance

2    upon any similarity in expression resulting from either the physiognomy of

3    dinosaurs or from the nature of stuffed animals.").

4         Nor does Plaintiff have a monopoly on elements that are common to the

5    treatment of unicorns, such as the color or physiology of a unicorn.  *See Satava*, 323

6    F.3d at 810 ("expressions that are standard, stock, or common to a particular subject

7    matter or medium are not protectable under copyright law.").

8         For example, the color white is unquestionably standard in the treatment of

9    unicorns.  The Merriam-Webster Dictionary defines "unicorn" as:

10        A mythical, **usually white** animal generally depicted with the body and
          head of a horse with long flowing mane and tail and a **single often**
11        **spiraled horn** in the middle of the forehead.

12   (*See* Request for Judicial Notice in Support of Motion to Dismiss FAC ("RJN"), Ex.

13   A (emphasis added).)  This entry also provides an illustration of a unicorn, which is

14   depicted with a white body, (RJN, Ex. A at 4), and provides further images which

15   depict a white unicorn with a gold horn (RJN, Ex. A at 6).  (*See also* RJN, Ex. B

16   (Encyclopedia Britannica entry noting the earliest description of a unicorn in Greek

17   literature of a "single-horned" animal "with a white body").)  A "full-bodied"

18   representation of a unicorn, as well as a golden horn also are functional or common

19   features, and thus, unprotectable.  *See, e.g.*, *Aurora World, Inc. v. Ty Inc.*, 719 F.

20   Supp. 2d 1115, 1136 (C.D. Cal. 2009) (color of capuchin and lemur stuffed toys

21   unlikely to be protectible, "given that it resembles the animals as they are found in

22   nature.").

23        Importantly, this Court already has concluded that all of Plaintiff's proffered

24   elements (i.e., body of a horse, white and monochromatic coloring, and gold horn)

25   are standard to the treatment of unicorns and thus, unprotectable:

26        Therefore, Plaintiff cannot prevent Defendants from copying the
          aspects of its unicorn that stem from a horned-horse's anatomical
27        features. . . . A horse walking or standing mid-stride is 'an idea
          expressed in nature,' rendering it unprotectable.

28

1    . . .

2    [T]he Court does not think the whiteness of the unicorn is protectable.
     Depicting a unicorn as white seems the 'standard, stock, or common'

3    approach to unicorns . . . . [A] white unicorn is a common enough trope
     that the Court would not find that aspect of Plaintiff's work to be

4    protectable.  Likewise, a golden horn might not be as common an
     image as a white body, but the Court thinks that it is a pretty standard

5    feature of depictions of unicorns and would not find it protectable.  In
     essence, the Court thinks Plaintiff is trying to protect the 'idea of

6    producing a [gold and white unicorn and the] elements of expression
     that naturally follow from' that idea.

7
     The Court would not be persuaded by the monochromatic aspect either.

8    Without more, the Court does not think that an animal sculpture that is
     all one color is protectable – it seems like the glass-in-glass technique

9    in *Satava*.

10   (Order at 7-9.)

11        Because these elements are unprotectable, Plaintiff may not rely on them to

12   allege copyright infringement against Defendants.  *Apple Computer, Inc. v.*

13   *Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (plaintiff "may place *no*

14   reliance upon any similarity in expression resulting from unprotectable elements.").

15        Although Plaintiff will likely argue that its *combination* of elements is

16   protectable, this argument also fails.  The Ninth Circuit's opinion in *Satava* is

17   particularly instructive.  There, the Court considered a copyright infringement claim

18   concerning glass-in-glass sculptures of jellyfish.  *Satava*, 323 F.3d at 807.  The

19   sculpture was described as a "vertically oriented, colorful, fanciful jellyfish with

20   tendril-like tentacles and a rounded bell" encased in clear glass.  *Id*.  While the

21   Court acknowledged that "a *combination* of unprotectable elements may qualify for

22   copyright protection," this is true "only if those elements are numerous enough and

23   their selection and arrangement original enough that their combination constitutes an

24   original work of authorship."  *Id*. at 811.  The Court concluded that "[t]he

25   combination of unprotectable elements in Satava's sculpture falls short of this

26   standard."  *Id*.  Specifically, the Court reasoned that:

27        The selection of the clear glass, oblong shroud, bright colors,
          proportion, vertical orientation, and stereotyped jellyfish form,

28        considered altogether, lacks the quantum of originality needed to merit

-9-                          Case No. 2:18-cv-06091-GW (SKx)

copyright protection. *See U.S. v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("Trivial elements of compilation and arrangement, of course, are not copyrightable because they fall below the threshold of originality."). These elements are so commonplace in glass-in-glass sculpture and so typical of jellyfish physiology that to recognize copyright protection in their combination effectively would give Satava a monopoly on lifelike glass-in-glass sculptures of single jellyfish with vertical tentacles. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991) (noting that the selection, coordination, and arrangement of phone numbers in a directory 'is not only unoriginal, it is practically inevitable'). Because the quantum of originality Satava added in combining these standard and stereotyped elements must be considered 'trivial' under our case law, Satava cannot prevent other artists from combining them.

*Id*. at 811-12.  The same analysis applies to Plaintiff's work.  The selection of a full-bodied white monochromatic unicorn with a gold spiraled horn, even together,  is "trivial" and "lacks the quantum of originality needed to merit copyright protection."  As this Court has concluded, these elements are standard in the treatment of unicorns. Recognizing copyright protection in the combination of these elements effectively would grant Plaintiff a monopoly on the depiction of all white unicorns with a gold horn.  Accordingly, these elements, even combined, remain unprotectable.

**b.    After Filtering Out These Unprotectable Elements, Plaintiff's Unicorn Is Strikingly Different From MOIC's Unicorn**

After filtering out these unprotectable elements, a side-by-side comparison of the parties' respective works reveals starkly different expressive elements.

| Plaintiff's Unicorn | MOIC's Unicorn |
|---|---|



1    For example, Plaintiff's unicorn possesses a longer, bulkier and more

2  muscular torso.  By contrast, MOIC's unicorn features a leaner, shorter, and less

3  muscular torso.  While Plaintiff's unicorn has shorter, muscular legs, and small

4  hooves, MOIC's unicorn has long, thin legs and appreciably larger hooves.

5  Plaintiff's unicorn features a long tail and no mane along the back of its neck, while

6  MOIC's unicorn has a short, bushy tail, and a mane along its neck.  The unicorns'

7  faces also appear quite distinct as Plaintiff's unicorns features a fuller face with

8  robust cheeks and round eyes, whereas MOIC's unicorn features a thinner face,

9  almond-shaped eyes and a longer horn.  Further, the unicorns are positioned

10  differently.  MOIC's unicorn stands with its right hind leg behind its left hind leg

11  and its left front leg behind its right front leg.  The legs of MOIC's unicorn are

12  positioned in the exact opposite way, namely, its left hind leg is behind its right hind

13  leg and its right front leg is behind its left front leg.  Additionally, while Plaintiff's

14  unicorn is depicted with its head, eyes and mouth angled downwards, the head, eyes

15  and mouth of MOIC's unicorn are angled upright.  And, notwithstanding Plaintiff's

16  allegation to the contrary, the horns also are different as the horn of MOIC's unicorn

17  is longer and appears at a different angle.

18    Indeed, the Court has noted these substantial distinctions:

19    [T]here are many differences between the beasts.  Plaintiff's unicorn is
      shorter and squatter than Defendants' thin, long-legged version.
20    Defendants' unicorn has a short tail and its hooves are bigger.  Also, its
      ears are more upright, and its neck is raised so that it is less parallel to
21    the ground than Plaintiff's creature.  Importantly, the horns themselves
      seem different to the Court both in terms of their length and angle.  In
22    effect, the Court sees the unicorns as pretty different but for the color of
      the body and the horn.
23
   [Order at 9.]
24
      In sum, the only commonality between the works is the idea of a white
25
   monochromatic unicorn with a gold horn – a concept which is unprotectable under
26
   copyright law.
27

28

The facts of the Ninth Circuit's recent decision, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) are instructive.  There, the plaintiff alleged that Nike infringed his copyright in a photograph of Michael Jordan when it commissioned its own photograph of Jordan in the grand jete pose and used the photograph to create its famous "Jumpman" logo.  *Id*. at 1116.  The district court granted Nike's motion to dismiss with prejudice, finding no substantial similarity between the two works as a matter of law.  *Id*.  The Ninth Circuit affirmed, finding that the plaintiff could not plausibly allege that Nike copied enough of the *protected* expression from his photo to show substantial similarity.  *Id*. at 1121.  After filtering out the nonprotectable elements of the plaintiff's work (i.e., plaintiff "cannot prohibit other photographers from taking their own photos of Jordan in a leaping, *grand jete*-inspired pose"), the Ninth Circuit went on to compare the protectable elements of the works, namely the selection and arrangement of the photos' elements.  *Id*. at 1121.

| Plaintiff's Work | Nike's Work |
| --- | --- |
| | |

The Court noted numerous differences between the two photos, including: "[t]he position of each of his limbs in the two photos;" the setting of each photo – the grassy knoll present in the plaintiff's photo was missing from Nike's photo; the positioning of the basketball hoops – the hoop in the plaintiff's photo is placed out of Jordan's reach, whereas in Nike's photo, the hoop is easily within Jordan's reach; and the background of each photo – while the background of the plaintiff's photo is a cloudless blue sky with a large sun, the background of the Nike photo has no sun

and consists of the Chicago skyline silhouetted against late dusk or early dawn. *Id.* at 1121-22.

In light of these material differences, the Court concluded:

> [T]hese differences in selection and arrangement of elements, as reflected in the photos' objective details, preclude as a matter of law a finding of infringement . . . . What Rentmeester's photo and the Nike photo share are similarities in general ideas or concepts: Michael Jordan attempting to dunk in a pose inspired by ballet's *grand jeté*; an outdoor setting stripped of most of the traditional trappings of basketball; a camera angle that captures the subject silhouetted against the sky. <u>Rentmeester cannot claim an exclusive right to ideas or concepts at that level of generality, even in combination. Permitting him to claim such a right would withdraw those ideas or concepts from the "stock of materials" available to other artists, . . . thereby thwarting copyright's "fundamental objective" of "fostering creativity." Copyright promotes the progress of science and the useful arts by "encouraging others to build freely upon the ideas and information conveyed by a work."</u>

*Id.* at 1123 (emphasis added).

Similarly, in *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829 (S.D.N.Y. 2016), the district court granted the defendant's motion to dismiss a complaint for copyright infringement. The plaintiff owned a copyright in his sculpture featuring a Pegasus breaking through the roof of a car, and sued Toyota for copyright infringement related to Toyota's advertising which featured a car transporting a large stuffed hybrid of a unicorn and Pegasus. *Id.* at 832-33.

| Plaintiff's Work | Toyota's Work |
| --- | --- |
|  |  |

SMRH:488655283.3      DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FAC

1    Toyota moved to dismiss the plaintiff's complaint, contending that the
2    plaintiff could not show as a matter of law that the two works were substantially
3    similar.  *Id*.  In granting Toyota's motion to dismiss, the Court first filtered out the
4    non-protectable elements of the plaintiff's work.  *Id*. at 835-36.  Specifically, the
5    Court stated that "there can be no question that plaintiff does not have a monopoly
6    on all depictions of a Pegasus, even those juxtaposed with the roof of an
7    automobile[.]"  *Id*. at 835.  In comparing the protectable expression of the works, the
8    Court concluded that "there is almost nothing similar between plaintiff's Sculpture,
9    on the one hand, and defendants' allegedly infringing works, on the other."  *Id*. 836.
10   The Court noted numerous differences in the works including that plaintiff's
11   Pegasus was "strikingly realistic and life-like" while defendant's was "a pink,
12   smiling, oversized stuffed animal."  *Id*.  The Court noted that the vehicles in each
13   work were "also highly dissimilar."  *Id*.  In light of these stark differences, the Court
14   determined that "plaintiff's copyright infringement claim fails as a matter of law."
15   *Id*. at 839.

16   Like *Rentmeester* and *Croak*, Plaintiff cannot plausibly allege that the
17   protected elements of its work are substantially similar to the MOIC's unicorn.
18   Accordingly, this claim must be dismissed with prejudice.  *See Iqbal*, 556 U.S. at
19   678 (a complaint must "state a claim to relief that is *plausible* on its face.")
20   (emphasis added); *Gallagher v. Lions Gate Entm't*, No. 2:15-cv-2739-ODW, 2015
21   WL 12481504, at *2 (C.D. Cal. Sept. 11, 2015) ("[W]hen substantial similarity is
22   absent after a review of the works at issue no amendment could cure the complaint's
23   deficiencies, thus, dismissal with prejudice is not uncommon.")

24   **C.    <u>Plaintiff's Claim For Unjust Enrichment – Breach Of Confidence
         Fails</u>**
25
       Although Plaintiff has alleged that its unjust enrichment claim is grounded in
26   a "breach of confidence," as a matter of law, Plaintiff cannot allege a key element of
27   this claim, specifically, that Plaintiff's submitted idea was "novel."  *See, e.g.*, 5
28

Nimmer on Copyright § 19D.06 ("Novelty continues to be a necessary element of breach of confidence and confidential relationship claims even in California"); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903 (9th Cir. 1987) ("To prevail on their claim for breach of confidence, appellants must show that they conveyed confidential and novel information . . ."; affirming summary judgment for defendants on breach of confidence claim); *Fink v. Goodson-Todman Enters., Ltd.*, 9 Cal. App. 3d 996, 1009 (1970) ("The right of plaintiff's work to protection by reason of sufficient novelty and elaboration of the accessible idea is a prerequisite . . . in the unjust enrichment-breach of confidence count.").

Here, the idea of a white unicorn is not "novel" because this idea is ubiquitous in popular culture. Indeed, the Merriam-Webster Dictionary defines a unicorn as a "mythical, <u>usually white</u> animal." (RJN, Ex. A at 2 (emphasis added).) Similarly, the Encyclopedia Britannica notes that the earliest description of a unicorn dates back to 400 B.C.E. and was depicted "<u>with a white body</u>." (RJN, Ex. B at 1 (emphasis added).) Because Plaintiff cannot allege a key element of its breach of confidence claim, this claim must be dismissed.

### D. <u>Plaintiff's Claim For Unfair Competition Continues To Be Preempted By The Copyright Act</u>

The Ninth Circuit employs a two-part test to determine whether the Copyright Act preempts a state law claim. Preemption occurs where: (1) a plaintiff's work falls within the "subject matter" of the Copyright Act; and (2) the rights asserted by a plaintiff under state law are "equivalent to" those protected by the Copyright Act. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). With respect to the first factor, to "come within the subject matter of copyright," a work "does not necessarily have to be actually protected by a specific copyright or even itself be copyrightable; it just has to be 'within the subject matter' of the Act." *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001). With respect to the second factor, "a right which is the 'equivalent to copyright' is one that is

-15-

infringed by the mere act of reproduction." *Laws v. Sony Music Entm't*, 448 F.3d 1134, 1146 (9th Cir. 2006). Thus, "[t]o survive preemption, the state cause of action must protect rights which are <u>qualitatively different</u> from the copyright rights." *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (emphasis added) (overruled on other grounds).

Courts have uniformly held that when a state law claim is based entirely on the unlawful use of purported copyrighted works, the claim is completely preempted by the Copyright Act. *See, e.g.*, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998); *Firoozye*, 153 F. Supp. 2d at 1129-30; *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 820-22 (C.D. Cal. 1998); *Dielsi v. Falk*, 916 F. Supp. 985, 993 (C.D. Cal. 1996).

Here, Plaintiff's unfair competition claim is based solely on the alleged unauthorized use of Plaintiff's Work. Accordingly, this claim is preempted by the Copyright Act.

### 1.   Plaintiff's Work Falls Within The Subject Matter Of Copyright

Plaintiff's claim for unfair competition is based on Defendants' alleged use of Plaintiff's Work, *i.e.*, the design proposals submitted to MOIC. [FAC, ¶ 67 (unfair competition claim) (discussing "Defendants' unauthorized use of [Plaintiff's] copyrighted work.".) Undoubtedly, Plaintiff's design proposals, which constitute pictorial works, fall within the "subject matter of the Copyright Act" for purposes of a preemption analysis. *See* 17 U.S.C. § 102(a)(5) (identifying "pictorial, graphic, and sculptural works" as eligible for copyright protection).

### 2.   Plaintiff's Claim Is Equivalent To The Copyright Act

Additionally, Plaintiff's unfair competition claim asserts rights which are equivalent to those protected by the Copyright Act. Plaintiff's unfair competition claim is based on Defendants' alleged unauthorized use of Plaintiff's Work. [*See* FAC, ¶¶ 67-68 (unfair competition claim) ("Defendants have engaged in unlawful,

1    unfair, or fraudulent business acts of unfair competition in violation of Sections

2    17200 *et seq.*, and California common law.  This conduct includes Defendants'

3    unauthorized use of [Plaintiff's] copyrighted work.").]  Because the unfair

4    competition claim is not "qualitatively different" from rights protected by the

5    Copyright Act, this claim is preempted and must be dismissed, as this Court

6    previously concluded.  [Order at 11-12]; *see also Perfect 10, Inc. v. Cybernet*

7    *Ventures, Inc.*, 167 F. Supp. 2d 1114, 1125 (C.D. Cal. 2001) (dismissing unfair

8    competition claim on grounds of preemption); *Motown Record Corp. v. George*

9    *Hormel & Co.*, 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987) (unfair competition

10   claim preempted where essence of claim is derived from defendants' unauthorized

11   use of copyrighted work).[1]

12        **E.      Plaintiff's State Law Claims Against MOIC Fail**

13        Plaintiff has asserted its claims for breach of contract, unjust enrichment, and

14   unfair competition against both MOIC and Ms. Bunn.  However, Plaintiff has failed

15   to allege sufficient facts to assert these claims against MOIC, and accordingly,

16   MOIC must be dismissed from these claims.

17        In its breach of contract claim, Plaintiff alleges that "Defendants have

18   breached the [NDA] by, for example, using the design proposals in a public

19   exhibition at the San Francisco Museum of Ice Cream location."  [FAC, ¶ 50.]

20   However, the NDA was signed by Ms. Bunn only.  (Pour-Moezzi Decl., Ex. B.)

21   Indeed, the Court previously noted that "[t]here is no mention of 1AND8 [MOIC] in

22   the NDA."  [Order at 12.]  Because MOIC was not a signatory to the NDA,

23   Plaintiff's breach of contract claim against MOIC must be dismissed.  *See, e.g.,*

24   *Ledet v. Cal. Waste Solutions, Inc.*, No. C-12-6255 JSC, 2013 WL 1120786, at *6

25

26   [1]     Should the Court find that Plaintiff's unfair competition claim also is based
             on a breach of confidence, then, this claim fails for the same reasons as the
27           unjust enrichment claim, namely, that Plaintiff cannot plausibly allege that its
             submitted idea, a white unicorn, was novel.
28

(N.D. Cal. Mar. 18, 2013) ("Under California law, it is well settled that a non-party or non-signatory to a contract cannot be held liable for breach of that agreement") (granting motion to dismiss with prejudice breach of the covenant of good faith and fair dealing claim against defendant, who was not party to underlying contract); *Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354, 1359 (1993) ("[plaintiff] cannot assert a claim for breach of contract against one who is not a party to the contract."); *Clemens v. Am. Warranty Corp.*, 193 Cal. App. 3d 444, 452 (1987) ("only a signatory to a contract may be liable for any breach") ("Because AWC and Sluggett were not parties to the [contract], they could not be liable for a tortious breach or for deceit in connection with the making of said contract.  Neither cause of action could be stated as to them.").

Similarly, assuming the Court does not entirely dismiss the unjust enrichment and unfair competition claims, at a minimum, these claims must be dismissed against MOIC.  In its unjust enrichment – breach of confidence claim, Plaintiff wrongly alleges that "Defendants signed an NDA, and . . . understood the design proposal contained confidential information."  [FAC, ¶ 57.]  In fact, MOIC did not sign the NDA, nor is MOIC mentioned in the NDA.  (Pour-Moezzi Decl., Ex. B.)  A breach of confidence claim requires a plaintiff to plead that "there was an understanding between [plaintiff] and [defendant] that the confidence be maintained."  *Aliotti*, 831 F.2d at 903.  Because MOIC was not a party to the NDA, Plaintiff cannot plausibly allege that MOIC agreed to receive the design proposals in confidence.  Accordingly, this claim must fail against MOIC.

Similarly, if the Court concludes that the unfair competition claim is not preempted, but rather, based on a breach of confidence, this claim too must fail against MOIC.

## IV.   <u>CONCLUSION</u>

Defendants respectfully request that Plaintiff's claims for copyright infringement, unjust enrichment, and unfair competition be dismissed against both

1  Defendants, and that Plaintiff's breach of contract claim be dismissed against

2  MOIC.  Should the Court deny outright dismissal of the unjust enrichment and

3  unfair competition claims, these claims should still be dismissed against MOIC.

4  Because amendment would be futile, Defendants request that the Court deny leave

5  to amend.  *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.

6  1998) ("Although there is a general rule that parties are allowed to amend their

7  pleadings, it does not extend to cases in which any amendment would be an exercise

8  in futility or where the amended complaint would also be subject to dismissal.").

9  Dated:  December 13, 2018

10                                     Respectfully submitted,

11

12                                     SHEPPARD, MULLIN, RICHTER & HAMPTON
                                       LLP

13

14                                     By      /s/ Carlo F. Van den Bosch

15                                          CARLO F. VAN DEN BOSCH
                                           GAZAL POUR-MOEZZI

16                                         Attorneys for Defendants
                                           MARYELLIS BUNN

17                                         1AND8 INC., dba MUSEUM OF ICE

18                                                  CREAM

19

20

21

22

23

24

25

26

27

28