Connor Lynch (SBN 301538)
connor@lynchllp.com
Brian Lynch (SBN 292511)
brian@lynchllp.com
LYNCH LLP
4470 W. Sunset Blvd. No. 90096
Los Angeles, CA 90027
Phone: (949) 229-3141

Attorneys for Plaintiff Pretty in Plastic, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pretty in Plastic, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Maryellis Bunn, et al. <br><br> Defendants. | Case No. 2:18-cv-06091-GW (SKx) <br><br> Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint <br><br> Date:  January 24, 2019 <br> Time: 8:30 a.m. <br> Crtrm.: 9D <br><br> The Hon. George H. Wu |

# **TABLE OF CONTENTS**

I. Introduction ........................................................................................................................1

II. Statement of Facts ............................................................................................................2

III. Argument.........................................................................................................................3

   A.    Legal Standard on Motion to Dismiss ................................................................3

   B.    The Complaint Plausibly Alleges Copyright Infringement ..............................3

       1.    Defendants' Argument Rests on the Premise that the Combination of Elements in the PIP Unicorn Is Not Original, But This Is Contradicted by the Allegations of the Complaint ........................................................................................4

   C.    If the Court Dismisses the Copyright Claim and Declines to Retain Supplemental Jurisdiction, It Should Not Decide the Remaining State-Law Claims. ...................7

   D.    PIP Has Adequately Pleaded Breach of Confidence..........................................8

       1.    The Ideas Conveyed by PIP's Design Proposal Were Novel. ...........................8

       2.    A "Fiduciary Relationship" Is Not an Element of a Breach of Confidence Claim ........................................................................................................................9

   E.    Federal Law Does Not Preempt State-Law Claims Based on Defendants' Breach of the Confidence ........................................................................................................10

   F.    MOIC Is a Proper Defendant to the Contract Because It Is a Party to the Agreement and a Proper Defendant to Breach of Confidence Because It Understood Its Confidentiality Obligations ..........................................................................................11

       1.    MOIC Is a Party to the Non-Disclosure Agreement .......................................11

       2.    MOIC Understood It Was Required to Keep Design Proposals Confidential..............................................................................................................11

IV. Conclusion.....................................................................................................................13

# TABLE OF AUTHORITIES

Cases

*Aurora World, Inc. v. Ty Inc.*,
  2011 WL 13176413 (C.D. Cal. 2011) ................................................................. 6

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp 2d 1115 (C.D. Cal. 2009) ................................................................ 6

*Axess Int'l Ltd. v. Intercargo Insur. Co.*,
  183 F.3d 935 (9th Cir.1999) ............................................................................... 9

*Carnegie–Mellon University v. Cohill*,
  484 U.S. 343 (1988) ........................................................................................... 8

*Croak v. Saatchi & Saatchi N. Am., Inc.*,
  174 F. Supp. 3d 829 (S.D.N.Y. 2016) ................................................................ 7

*Faris v. Enberg*,
  158 Cal. Rptr. 704 (Ct. App. 1979) .................................................................... 9

*Faris v. Enberg*,
  158 Cal. Rptr. 704, 712 (Ct. App. 1979) .......................................................... 10

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ........................................................................................... 5

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ........................................................................................... 4

*Folkens v. Wyland Worldwide, LLC*,
  882 F.3d 768 (9th Cir. 2018) .............................................................................. 4

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004) ............................................................................ 11

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984) ............................................................................................. 3

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
  676 F.3d 841 (9th Cir. 2012) .............................................................................. 8

*Mattel, Inc. v. MGA Entm't, Inc.*,
  616 F.3d 904 (9th Cir. 2010) .............................................................................. 4

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002) ........................................................................ 4, 5

*Montz v. Pilgrim Films & Television, Inc.*,
　649 F.3d 975 (9th Cir. 2011) ..................................................................................12

*Newton v. Diamond*,
　388 F.3d 1189 (9th Cir. 2004) ..................................................................................8

*Parks School of Bus., Inc. v. Symington*,
　51 F.3d 1480 (9th Cir. 1995) ....................................................................................3

*Rentmeester v. Nike, Inc.*,
　883 F.3d 1111 (9th Cir. 2018) ..................................................................................7

*Satava v. Lowry*,
　323 F.3d 805 (9th Cir. 2003) ....................................................................................5

*Saunders v. Superior Court*,
　33 Cal. Rptr. 2d 438 (Ct. App. 1994) ......................................................................11

*Self Directed Placement Corp. v. Control Data Corp.*,
　908 F.2d 462 (9th Cir. 1990) ..................................................................................12

*Sheldon v. Metro–Goldwyn Pictures Corp.*,
　81 F.2d 49 (2d Cir.1936) ..........................................................................................8

*Stern v. Does*,
　978 F. Supp. 2d 1031 (C.D. Cal. 2011) ................................................................ 5, 6

*Stewart v. Screen Gems-EMI Music, Inc.*,
　81 F. Supp. 3d 938 (N.D. Cal. 2015) ......................................................................11

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
　7 F.3d 1434 (9th Cir. 1993) ....................................................................................12

*Swirsky v. Carey*,
　376 F.3d 841 (9th Cir. 2004) ....................................................................................4

*Wendt v. Host Int.*,
　125 F.3d 806 (9th Cir. 1997) ..................................................................................11

<u>Statutes</u>

17 U.S.C. § 301 ............................................................................................................12

## I. Introduction

After a hearing on Defendants' motion to dismiss, the Court granted Pretty in Plastic, Inc. ("PIP" or "Plaintiff") leave to amend its complaint regarding copyright, unjust enrichment, and unfair competition. The First Amended Complaint now satisfies the deficiencies the Court found in the original complaint, and Defendants' motion should therefore be denied in its entirety.

On the copyright claim, the Court previously reasoned that each individual element copied into Defendants' work, standing alone, was not sufficiently original to warrant copyright protection. Some elements, such as properties of horses (with the exception of no naturally occurring forelock), were found in nature, while other elements were found in prior depictions of unicorns. The amended complaint now alleges that the <u>combination</u> of elements that have been misappropriated by Defendants is original and had never been publicly disclosed before. Defendants' motion should fail on the copyright claim.

If the Court dismisses the copyright claim, it need not address the remaining state-law claims. The Court indicated it would not be inclined to exercise supplemental jurisdiction if the copyright claim were ultimately dismissed. If the Court declines to exercise supplemental jurisdiction over the state-law claims, it should not rule on them and instead dismiss them without prejudice.

If the Court both dismisses the copyright claim and engages in discretionary exercise of supplemental jurisdiction, the remainder of Defendants' motion should be denied.

PIP's amended unjust enrichment/breach of confidence claim now alleges additional facts and circumstances supporting Plaintiff's claim for breach of confidence. Defendants now argue only that the design lacks novelty and that MOIC (but not Ms. Bunn) did not understand its nondisclosure obligations. Defendants' "lack of novelty" defense is both contradicted by the allegations of the complaint and was already implicitly rejected by the Court. Further, if Defendants argue on reply that the claim fails for lack of a fiduciary relationship, the argument should fail because a fiduciary relationship is not an element of the claim. Defendants' other argument—that MOIC did not understand its nondisclosure

obligations—is contradicted both by the allegations of the Complaint and Defendants' previous arguments on the same subject.

Neither MOIC nor Maryellis Bunn should be dismissed from the contract claim, either. Both were recipients of confidential information under the Non-Disclosure Agreement, and both were bound not to disclose that confidential information.

## II. Statement of Facts

In late September 2016, Defendant MOIC, through an employee, first reached out to PIP to about PIP's potential involvement in MOIC's Los Angeles location. First Amended Complaint ("FAC") ¶ 11. In the conversations that followed, Defendant Bunn personally requested a design proposal for a rainbow sherbet room. FAC ¶ 12. Before PIP would send Defendants any design proposals, PIP required Bunn and MOIC to sign an NDA. FAC ¶ 14. After receiving the signed copy of the NDA, PIP sent, directly to Defendant Bunn and MOIC, the design proposals, including a design for a unicorn in MOIC's rainbow sherbet room. FAC ¶ 16.

Despite some negotiations, PIP and Defendants never reached any agreement for Defendants' use of the design proposals. FAC ¶ 18.

About a year after Defendant Bunn received PIP's design proposals, PIP discovered that Defendant Bunn and MOIC had copied PIP's design proposal for a rainbow room with a unicorn for an MOIC location. FAC ¶ 21. Among the elements copied is the combination of a full-bodied, monochromatic, semi-gloss white unicorn, with no forelock, a relatively realistic horse body, approximately eight visible spirals on a long, shiny gold horn, standing angled right-facing in a room. FAC ¶ 42.



| **Plaintiff PIP's Design Proposal** | **Defendants' Rainbow Room** |

In ruling on Defendants' first motion to dismiss, the Court did not address whether this particular combination of elements was protectable (individually, the Court found each element unprotectable). Dkt. No. 23 at 7–9. PIP now alleges this combination of elements had never been publicly disclosed before and is sufficiently original to be eligible for copyright protection. FAC ¶ 42.

**III. Argument**

As explained below, the FAC properly pleads copyright infringement, breach of contract, unjust enrichment, and unfair competition against both Defendant Bunn and Defendant MOIC.

    **A.    Legal Standard on Motion to Dismiss**

On a motion to dismiss, a court must take all allegations of material fact in the complaint as true and construe them in the light most favorable to the nonmoving party. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is not appropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Defendants' arguments require the Court to ignore this standard and instead construe facts and allegations against PIP.

    **B.    The Complaint Plausibly Alleges Copyright Infringement**

A plaintiff bringing a claim for copyright infringement must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

3

*Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). PIP has done so.

As before, Defendants argue only that Defendants' copying does not rise to the level of copyright infringement. In the Ninth Circuit, that determination requires an intrinsic test—for the jury—and an extrinsic test—for the court. *Metcalf v. Bochco*, 294 F.3d 1069, 1073 (9th Cir. 2002). "Intrinsic similarity" asks whether the works, as a whole, are substantially similar in "total concept and feel."

On summary judgment or a motion to dismiss, only the extrinsic test is relevant. *See id.* The extrinsic test focuses on analytical dissection of the two works and asks whether the works are similar beyond depicting the same idea. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010). Ordinarily, it is addressed at summary judgment, and even then, "[s]ummary judgment is 'not highly favored' on questions of substantial similarity." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018). This may be partly because the "extrinsic test requires 'analytical dissection of a work and expert testimony.'" *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

### 1. Defendants' Argument Rests on the Premise that the Combination of Elements in the PIP Unicorn Is Not Original, But This Is Contradicted by the Allegations of the Complaint

In its ruling on Defendants' first motion to dismiss, the Court considered whether individual elements of Plaintiff's unicorn depiction were "standard, stock, or common" to depictions of unicorns and then examined "the originality of depicting a unicorn as white with a gold horn." 8–9.

"Original," as the term is used in copyright, means only that the work was independently created by the author and possesses at least some minimal degree of creativity. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991). The requisite level of creativity required for copyright protection is "extremely low; even a slight amount will suffice." *Id.* Further, combinations of otherwise unprotectable elements may themselves be protectable. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection. *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002).

4

Generally, "if any author's independent efforts contain sufficient skill to motivate another's copying, there is ipso facto a sufficient quantum of originality to support a copyright." *Stern v. Does*, 978 F. Supp. 2d 1031, 1040 (C.D. Cal. 2011) (citing 1 Nimmer on Copyright § 2.01[B]).

PIP has now pleaded that the combination of elements in its work that have been copied—a full-bodied, monochromatic, semi-gloss white unicorn, with no forelock, an otherwise relatively realistic horse body, approximately eight visible spirals on a long, shiny gold horn, standing angled right-facing in a room—is both original and had never before been publicly displayed. These allegations are sufficient to establish that this combination of elements, within the context of the work, is original and protectable. Moreover, the fact this combination had never before been publicly displayed, despite the long history of unicorn depictions, is strong evidence that PIP would gain no monopoly over depictions of unicorns if it were to win this case.

To rebut originality, Defendants rely on *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), which reversed grant of a preliminary injunction after reviewing the factual record around plaintiff's glass-in-glass jellyfish sculpture. In *Satava*, the court found that a combination of similar elements between two jellyfish-in-a-glass-in-glass sculptural works was so "trivial" to combine that the plaintiff could not prevent other artists from using the combination of those elements. 323 F.3d at 812. The court concluded that the glass-in-glass element added nothing to the creativity of a combination and based that conclusion "in part on [] examination of the dozens of photographs of glass-in-glass jellyfish sculptures in the record." *Id.* at 812 n. 5.

The *Satava* court's ruling rested on findings of fact that negated a facially plausible claim of originality of a combination; its findings cannot be borrowed for a situation where the facts alleged in the complaint are assumed true and construed in a light most favorable to PIP. As this Court noted that the monochromatic aspect of the unicorn sculpture appeared to be like the glass-in-glass sculpture elements in *Satava*, it should, as the court did in *Satava*, base any ruling on originality on a developed factual record. Further, denial of a preliminary

5

1  injunction for lack of extrinsic similarity, as the Ninth Circuit commanded in *Satava*, does
2  not always mean that extrinsic similarity is ultimately lacking. *See Aurora World, Inc. v. Ty Inc.*,
3  719 F. Supp 2d 1115, 1136 (C.D. Cal. 2009) (denying preliminary injunction for lack of
4  extrinsic similarity); *Aurora World, Inc. v. Ty Inc.*, 2011 WL 13176413 at *18 (C.D. Cal. 2011)
5  (in the same case, denying summary judgment because fact-issue existed as to extrinsic
6  similarity). Moreover, the fact of copying implies a sufficient quantum of originality to
7  support a copyright. *See Stern*, 978 F. Supp. 2d at 1040.

8        Unlike the jellyfish arrangement in *Satava*, the combination of a full-bodied,
9  monochromatic, semi-gloss white unicorn, with no forelock, a relatively realistic horse body,
10 approximately eight visible spirals on a long, shiny gold horn, standing angled right-facing in
11 a room, is not common to the medium or to the depiction of unicorns. Indeed, this
12 combination of elements had <u>never</u> been publicly disclosed before, despite unicorns having
13 been depicted for millennia.

14       Defendants' primary argument is based not on the unprotectability of the
15 combination of these elements, but instead on reframing the combination of
16 misappropriated elements into a much simpler combination—a monochromatic white
17 unicorn with a gold horn. The approach should be rejected because it deliberately ignores
18 the combination of elements that forms the basis of the infringement.

19       Finding extrinsic similarity in this case would not grant PIP a monopoly on all
20 depictions of unicorns, or even all depictions of unicorns that include these elements,
21 including in this case. It would merely allow PIP to present to a jury—in this case—evidence
22 the Museum of Ice Cream Rainbow Room and the PIP Rainbow Sherbet Room Design
23 Proposal are substantially similar in total concept and feel and that the MOIC Rainbow
24 Room was copied from the PIP Rainbow Sherbet Room Design Proposal.

25       As before, Defendants cite *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) for
26 the proposition that human poses, outdoor settings in photographs, and camera angles in
27 photographs are not copyrightable. These propositions are as uncontested here as they are
28 irrelevant. Defendants also again rely on *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp.

1  3d 829 (S.D.N.Y. 2016), in which one work with a real-life depiction of a Pegasus was found
2  not substantially similar under the Second Circuit test to another work with a stuffed unicorn
3  that was a completely different color. *Croak* is, as it was before, inapposite because the works
4  in that case were completely different—different color, style, texture, and a different car—
5  unlike the works in this case.

6      Defendants go on to point out differences between the unicorns, but even if these
7  differences are accepted at face value, "no plagiarist can excuse the wrong by showing how
8  much of his work he did not pirate." *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)
9  (quoting *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)). "It is entirely
10 immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other
11 respects, similarity as to a substantial element of plaintiff's work can be shown." *L.A. Printex*
12 *Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851 (9th Cir. 2012) (citing 4 Nimmer on
13 Copyright § 13.03).

14     **C.    If the Court Dismisses the Copyright Claim and Declines to Retain Supplemental Jurisdiction, It Should Not Decide the Remaining State-Law Claims.**
15

16     In its ruling on Defendants' first motion to dismiss, the Court notes that it "would
17 not be inclined to retain jurisdiction of this case if the copyright claim is ultimately
18 dismissed." Dkt. No. 23 at 11 n. 3.

19     No diversity of citizenship is alleged to exist in this case, and the Court may exercise
20 its discretion to dismiss, without prejudice, the remaining state law claims under 28 U.S.C.
21 § 1367(c), so PIP may bring the remaining state-law claims in state court. "[I]n the usual case
22 in which all federal-law claims are eliminated before trial, the balance of factors . . . will point
23 toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon*
24 *University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). PIP does not contend that this case is so
25 unusual as to warrant exercise of supplemental jurisdiction after a dismissal of the copyright
26 claim at this early stage.

27     If the Court declines to exercise supplemental jurisdiction after any dismissal of the
28 copyright claim, the Court should not address the remaining state-law claims and should

simply dismiss them without prejudice. *See Axess Int'l Ltd. v. Intercargo Insur. Co.*, 183 F.3d 935, 943–44 (9th Cir.1999) ("once the district court chose not to exercise supplemental jurisdiction over [plaintiff's] supplemental state law claims, it lacked the power to adjudicate the merits of these claims").

If the Court retains supplemental jurisdiction, it should deny Defendants' motion as to all state-law claims.

### D. PIP Has Adequately Pleaded Breach of Confidence

An actionable claim for breach of confidential relationship occurs when "an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission." *Faris v. Enberg*, 158 Cal. Rptr. 704, 712 (Ct. App. 1979).

#### 1. The Ideas Conveyed by PIP's Design Proposal Were Novel.

Contrary to Defendants' assertions, the ideas conveyed by PIP's design proposal were novel. FAC ¶ 56–57, 62. Nowhere do Defendants cite any allegation or evidence that a full-bodied, monochromatic white unicorn with a long, gold horn inside of a rainbow-themed room at an ice-cream-themed social-media attraction was not novel at the time the design proposal was disclosed to Defendants. This argument should thus fail for the same reason Defendants' argument to dismiss the breach of contract failed: the idea of a "white unicorn in a rainbow-themed room" was not "generally available to the public." Dkt. No. 23 at 11. Likewise, a full-bodied, monochromatic, semi-gloss white unicorn with a long, gold horn in a rainbow-themed room of an ice-cream themed museum was novel at the time created by PIP and submitted to Defendants with the mutual understanding that confidentiality would be maintained.

When Defendants received a design proposal (not at issue in this case) from PIP that they believed did not contain protectable ideas, they said so when they received it: "We also already have [idea contained in a different design proposal] from v1 (photo attached) that will likely be reinstalled for v2." Their silence on the Rainbow Sherbet Room design

8

proposal is further evidence that Defendants understood the design proposal contained novel ideas when they received it.

Based on the allegations of the complaint, including the explicit allegation that the design proposal was novel, Defendants' novelty argument should be rejected.

### 2. A "Fiduciary Relationship" Is Not an Element of a Breach of Confidence Claim

Though Defendants seem to have abandoned their previous argument that the breach of confidence claim should fail for lack of a fiduciary relationship between PIP and Defendants, PIP will address it anyway because Defendants previously raised the argument only in reply.

A claim for breach of confidence is "not limited to fiduciary relationships, but [can] exist in any number of situations, such as principal and agent, partners, joint adventurers, and in a buyer/seller relationship where a trade secret is disclosed in the course of confidential negotiations on the price to be paid for the secret." *Faris v. Enberg*, 158 Cal. Rptr. 704, 712 (Ct. App. 1979)

That is just the case here: PIP communicated the design proposals for the purpose of agreeing on a price for Defendants to pay to use them. PIP ensured that Defendants understood the confidentiality of the design proposals at the time the design proposals were communicated by explicitly conditioning the sending of the design proposals on Defendants' acceptance of terms of confidentiality in a written contract, FAC ¶ 57, and it labeled the design proposals that it sent to Defendants as "Property of Pretty in Plastic," FAC ¶ 16. Even in the absence of an enforceable non-disclosure agreement, Defendants understood from all of the circumstances, including industry norms, that it could not use or disclose the design proposals without agreeing on a price to be paid for the design proposals. FAC ¶ 57. When Defendants received a design proposal (not at issue in this case) from PIP that they believed did not contain protectable ideas, they said so when they received it. FAC ¶ 59. Their silence on the Rainbow Room design proposal, together with their signature on the Non-Disclosure Agreement, also indicates they understood the proposal was confidential.

9

The FAC thus more than adequately pleads breach of a confidential relationship.

### E. Federal Law Does Not Preempt State-Law Claims Based on Defendants' Breach of the Confidence

Claims under state law are preempted by the Copyright Act where: (1) the conduct at issue comes within the subject matter of copyright, and (2) the state-law rights are equivalent to any of the exclusive rights within the general scope of copyright. 17 U.S.C. § 301. *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004). "[C]laims are not preempted by the federal copyright statute so long as they 'contain elements . . . that are different in kind from copyright infringement.'" *Wendt v. Host Int.*, 125 F.3d 806, 810 (9th Cir. 1997).

Unfair competition under California law may be predicated on any unlawful practice, whether it violates criminal, federal, state, or municipal, statutory, regulatory, or court-made law. *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "[A] plaintiff may bring a[n] [unfair competition law] claim even where it overlaps with a concurrently brought breach of contract and breach of the implied covenant of good faith and fair dealing claim." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015).

Here, PIP's state-law claims are grounded in the breach of the confidential relationship between the Parties. FAC. ¶ 24–27; FAC ¶ 59. The Ninth Circuit has repeatedly held that claims based on breach of confidence are not preempted by the Copyright Act.

In *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990), the Ninth Circuit reversed a district court's grant of summary judgment on a breach-of-confidence claim brought alongside a copyright claim. In reviewing cases where misappropriation cases were not preempted by federal copyright or patent law, the Ninth Circuit in *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1441 (9th Cir. 1993) remarked that such claims were still tenable when the claims included an "extra element" different from copyright law. "In *Self Directed*, the extra element [preventing preemption] was an alleged breach of a confidential relationship. [Citation omitted.]"

More recently, in *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 981 (9th Cir. 2011), the Ninth Circuit held that a "claim for breach of confidence also survives copyright

10

preemption" because "[t]he claim protects the duty of trust or confidential relationship between the parties, an extra element that makes it qualitatively different from a copyright claim."

The Court should thus deny Defendants' motion to dismiss state-law claims because they are not preempted by federal law.

### F. MOIC Is a Proper Defendant to the Contract Because It Is a Party to the Agreement and a Proper Defendant to Breach of Confidence Because It Understood Its Confidentiality Obligations

Defendants ask that Defendant MOIC be dismissed on all state-law causes of action, arguing MOIC was not party to the NDA and did not understand its nondisclosure obligations. Both arguments are premised on facts contradicted by the FAC's allegations, and Defendants' motion as to MOIC should be denied.

#### 1. MOIC Is a Party to the Non-Disclosure Agreement

Perhaps the best argument that MOIC was a party to the contract is Defendants' own words: "The NDA itself reflects that Ms. Bunn signed as 'an officer' of MOIC." Dkt. No. 17 at 23–24. Ms. Bunn "signed the NDA [] as an agent of MOIC." Dkt. No. 17 at 24. Defendants now claim not only that MOIC is not a party to the NDA, but also that this is apparent from the allegations of the FAC—despite having argued that exactly the opposite was true just months ago.

As before, the FAC alleges that "Defendants entered into a contract entitled 'NON-DISCLOSURE AGREEMENT' on November 3, 2016" and that "Defendants have breached the contract by, for example, using the design proposals in a public exhibition at the San Francisco Museum of Ice Cream location." FAC ¶¶ 47–50. The contract itself binds the "Recipient," which was both Defendant Bunn, who personally received the design proposals, *and* MOIC, which also received the design proposals. *See* Dkt. No. 17–4; FAC. ¶¶ 11–18, 27.

#### 2. MOIC Understood It Was Required to Keep Design Proposals Confidential

Finally, Defendants ask the Court to dismiss unjust enrichment and unfair

11

competition claims against MOIC, even if the contract claims remain. They rely on a single fact of the FAC that they allege isn't true—that MOIC did not sign an NDA. MOIC is a corporation and cannot act but through its agents, and Defendant Bunn was the agent who signed. Her signature bound the recipients of confidential information—both herself and MOIC.

Even if the contract claim were to be dismissed against MOIC, though, the circumstances giving rise to the expectation of confidence go beyond just the NDA. Indeed, Defendants, through industry norms and circumstances surrounding the receipt of design proposals, understood the design proposal contained confidential information. FAC ¶ 57. Defendants also understood the necessity of maintaining the confidentiality of the proposals and understood confidentiality to apply to PIP's rainbow sherbet room design proposal, in particular. FAC ¶ 58–59. PIP sent the design proposal as one of several, and when other design proposals contained information that Defendants believed not to be protected by confidentiality, Defendants, including another employee of MOIC, said so at the time of receipt. FAC ¶ 59. Defendants never communicated, at that time, any belief that any part of the rainbow room design proposal would not be confidential, nor did they communicate such an understanding in response to PIP's email requesting explanation for use of the design proposal without payment. FAC ¶ 60.

Because Defendants understood the design proposals to be confidential, based on the allegations of the FAC, Defendants' counterfactual argument should be rejected.

**IV. Conclusion**

For all of the foregoing reasons, PIP respectfully requests that the Court deny Defendants' motion in its entirety.

DATED: January 3, 2019

Respectfully submitted,

LYNCH LLP

By  /s/ Connor Lynch
    Connor Lynch
    *Attorneys for Plaintiff*
    *Pretty in Plastic, Inc.*

13

OPPOSITION TO MOTION TO DISMISS