JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 18-6091-GW(SKx) | Date | February 8, 2019 |
|---|---|---|---|
| Title | *Pretty in Plastic, Inc. v. Maryellis Bunn, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - FINAL RULING ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [25]**

Based on the attached final decision on Defendants' Motion to Dismiss: (1) the Plaintiff's copyright cause of action is dismissed without leave to amend and (2) the Court declines to exercise supplemental jurisdiction over the remaining state causes of action and they are dismissed without prejudice.

|  | : |
|---|---|
| Initials of Preparer | JG |

<u>*Pretty in Plastic, Inc. v. Maryellis Bunn et al.*</u>; Case No. 2:18-cv-06091-GW-(SKx)
Final Ruling on Motion to Dismiss

.

## I.     Background

Plaintiff Pretty in Plastic, Inc. ("Plaintiff" or "PIP) sues Defendants Maryellis Bunn ("Bunn") and 1AND8, Inc. ("1AND8" and, collectively with PIP, "Defendants") for: (1) Copyright Infringement, 17 U.S.C. §§ 106, *et seq.*; (2) Breach of Contract; (3) Unjust Enrichment; and (4) Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL claim").  *See generally* First Amended Complaint("FAC"), Docket No. 24.  Defendants move to dismiss the complaint in full.  *See generally* Motion to Dismiss ("Motion"), Docket No. 25.  Plaintiff opposes.  *See generally* Opposition to Motion ("Opp'n"), Docket No. 27.

The Complaint alleges the following:  PIP was founded by "Julie B." in Los Angeles in 2006.  FAC ¶ 2.  Plaintiff is a production and fabrication studio for art installations, pop art projects, fine art fabrication, multiples, and designer toys.  *Id.* ¶ 3.  PIP employs and collaborates with creatives (presumably artists) to deliver projects to paying clients and customers.  *Id.* ¶¶ 3, 5.  Julie B., as an artist and founder of PIP, has been featured in LA Weekly, Juxtapoz, Design Bureau, Reading Rainbow, NPR's Morning Edition, and was co-curator for "The Art of Toys" exhibit at the Lancaster Museum of Art and History.  *Id.* ¶ 4.

1AND8 owns and operates the "Museum of Ice Cream."  *Id.* ¶ 9.  Each Museum of Ice Cream location is a "pop-up" business in a repurposed building that features ice cream themed rooms through which groups of customers walk.  The rooms feature artistic exhibits and immersive experiences, bright playful colors, and the locations are intended to remind visitors of ice cream and evoke feelings of nostalgia.  *Id.* ¶ 10.

In September 2016, 1AND8 contacted PIP about creating a room installation at the Los Angeles Museum of Ice Cream's Spring 2017 exhibition.  *Id.* ¶ 11.  Bunn personally asked PIP to bid on one item and four rooms, including a "Rainbow Sherbet Room."  *Id.* ¶ 12.  PIP prepared several proposals, but before sharing them, asked on November 3, 2016 that Defendants sign a Non-Disclosure Agreement ("NDA"), which Bunn signed that day.  *Id.* ¶¶ 13-14.  Later that day, PIP sent 1AND8 concepts and designs for each of the four rooms.  *Id.* ¶ 16.  Each design was marked as "property" of PIP which could not be "reproduced without written permission."  *Id.*  The design for the Rainbow Sherbet Room included a solid-white unicorn with

1

a long gold horn. *Id.* ¶ 17. PIP and 1AND8 never reached an agreement for use of PIP's designs. *Id.* ¶ 18.

Just under a year later, in October 2017, a newsletter for the San Francisco Museum of Ice Cream featured a solid-white unicorn with a long gold horn. *Id.* ¶ 19. PIP contacted Defendants to explain the use of the unicorn. *Id.* ¶ 21. Around that time, in an Instagram post, the Museum of Ice Cream stated:

> When designing MOIC, our Co-Founder, Maryellis Bunn, wanted to create a space that commemorated the city's beautiful message of cohesion and inclusivity. MOIC SF's RAINBOW room, uses the symbolism of unicorns & rainbows as a tribute to San Francisco's history of acceptance.

*Id.* ¶ 24. Bunn also described the Rainbow Sherbet Room at the San Francisco Museum of Ice Cream as her direct response to the "pride" celebration in San Francisco. *Id.* ¶ 26.

The various Museums of Ice Cream have received nationwide attention and Bunn has declared that she expects each location to garner at least $10 million in ticket sales. *Id.* ¶ 30. The unicorn in the San Francisco Rainbow Sherbet Room has been a "HUGE hit" and featured in social and other media. *Id.* ¶¶ 31-32. The unicorn is featured on the Museum of Ice Cream website.

On June 18, 2018, the United States Copyright Office accepted an application for copyright registration for the original work, Pretty in Plastic Rainbow Sherbet Room Design Proposal, and assigned it case number 1-6689555661. *Id.* ¶ 40. Plaintiff alleges that:

> [t]he selection and arrangement of a full-bodied, monochromatic, semi-gloss white unicorn with approximately eight visible spirals on a long, shiny gold horn, as depicted in the Pretty in Plastic Rainbow Sherbet Room Design Proposal, is an original depiction of a unicorn. The combination of these elements is original and had never been publicly disclosed before Defendants copied this combination of elements, including in the San Francisco location of the MOIC.

*Id.* ¶ 42.

Plaintiff alleges that Defendants' infringement of its copyright has been undertaken knowingly and with intent to financially gain from the protected work. *Id.* ¶ 43. Plaintiff further alleges that Defendants violated the NDA by using Plaintiff's design propose at the San Francisco Museum of Ice Cream. *Id.* ¶ 50.

Likewise, Plaintiff asserts that Defendants have been unjustly enriched through their

"breach of confidence." *See id.* ¶¶ 53-64. Specifically, Plaintiff asserts that she conveyed confidential and novel information in her design proposal that Defendants then used to enrich themselves. *See id.* ¶ 56.

Finally, Plaintiff asserts its UCL claim based on Defendants' unauthorized use of PIP's copyrighted work. *See id.* ¶¶ 65-68.

## II.   Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'"

*Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

### III. Discussion

#### A. Judicial Notice

Defendants seek judicial notice of the Merriam-Webster Dictionary definition of "unicorn" and the "unicorn" entry in the Encyclopedia Britannica. *See generally* Request for Judicial Notice ("RJN"), Docket 26. Plaintiff did not oppose the RJN. *See generally* Docket. The Court would again grant the RJN for the reasons stated in its first order on Defendants' motion to dismiss. *See* Nov. 8, 2018, Minutes of Defendants' Motion to Dismiss Complaint ("First Order"), Docket No. 23, at 3.

#### B. Copyright Infringement[1]

To demonstrate copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of that work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *petition for cert. filed*, 2018 WL 6504255 (U.S. Dec. 3, 2018) (No. 18-728).

"When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.*

"Proof of unlawful appropriation—that is, *illicit* copying—is necessary because copyright law does not forbid all copying." *Id.* "[A] defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work. To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.' " *Id.* As the Ninth Circuit recently clarified, the term "substantial similarity" means different things to "copying" and "unlawful appropriation." *Id.* The Ninth Circuit explained:

> To prove copying, the similarities between the two works need not
> be extensive, and they need not involve protected elements of the

---

[1] Because the FAC is so similar to the original Complaint, much of this tentative ruling will be the same as the Court's First Order. Specifically, on the copyright infringement claim, Plaintiff simply added one new paragraph to the SAC. *Compare* FAC ¶ 42 *with* Complaint, Docket No. 1, ¶ 42.

> plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently. To prove unlawful appropriation, on the other hand, the similarities between the two works must be "substantial" and they must involve protected elements of the plaintiff's work.

*Id.*

To determine whether works are substantially similar for unlawful appropriation, courts employ a two-part test: an intrinsic test and an extrinsic test. *Id.* at 1118. "The intrinsic test is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.' " *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citing *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)). Because the intrinsic test is a "subjective assessment of the concept and feel of two works," *Shaw v. Lindheim*, 919 F.2d 1353, 1360 (9th Cir. 1990), a determination of two works' intrinsic similarities "must be left to the jury," *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

A court may dismiss a complaint on a 12(b)(6) motion, however, for failing to satisfy the extrinsic test. *See Rentmeester*, 883 F.3d at 1123; *Schkeiban v. Cameron*, No. CV 12-0636-R-(MANx), 2012 WL 5636281 (C.D. Cal. Oct. 4, 2012), *aff'd*, 566 F. App'x 616 (9th Cir. 2014) (dismissing a complaint with prejudice because the plaintiff could not satisfy the extrinsic test).

Citing *Cavalier*, the *Rentmeester* court summarized the extrinsic test as follows:

> The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression. Before that comparison can be made, the court must "filter out" the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject). The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works.

*Rentmeester*, 883 F.3d at 1118 (citations omitted).

In its First Order, applying the extrinsic test, this Court reviewed the individual elements of the comparable unicorns and determined that the individual aspects were not protectable under the Copyright Act. *See* First Order at 8-9. To the extent that certain individual elements – such as the monochromatic white color scheme or ringed gold horn – may be protectable, the Court determined that there was not a substantial similarity between the two unicorns. *See id.* at 9.

Specifically, the Court noted that the relative length of the horns and the angle at which they come out of the unicorns' foreheads were clearly different.

Plaintiff "now alleges that the <u>combination</u> of elements that have been misappropriated by Defendants is original and had never been publicly disclosed before." *See* Opp'n at 1. Specifically, Plaintiff added one paragraph to the FAC:

> [t]he selection and arrangement of a full-bodied, monochromatic, semi-gloss white unicorn with approximately eight visible spirals on a long, shiny gold horn, as depicted in the Pretty in Plastic Rainbow Sherbet Room Design Proposal, is an original depiction of a unicorn. The combination of these elements is original and had never been publicly disclosed before Defendants copied this combination of elements, including in the San Francisco location of the MOIC.

FAC ¶ 42.

As in its First Order, the Court will apply the extrinsic test and compare the following pictures:

 

Plaintiff PIP's Design Proposal | Defendants' Rainbow Room

The Court does not think that Plaintiff's single new allegation changes the Court's analysis in its First Order. On a basic level, the Court thinks it is implausible that a white unicorn with a gold horn "is original and ha[s] never been publicly disclosed before." As the Ninth Circuit explained in *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003), "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." Further, and more relevant to Plaintiff's point on this second motion to dismiss, "it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection . . . . [A] combination of unprotectable elements is eligible for copyright

6

protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* at 811.

The Court does not think that Plaintiff's unicorn displays the "quantum of originality needed to merit copyright protection." *Id.* Plaintiff's unicorn depicts the mythical creature as they are often depicted. Granting Plaintiff a copyright over her unicorn would effectively provide Plaintiff a monopoly over depictions of white unicorns. *See id.* at 812.

Moreover, even if the Court were to credit Plaintiff's argument that the combination of the unprotectable elements renders the unicorn protectable, the Court would conclude (again) that the unicorns are strikingly different. While, "we do not have a well-defined standard for assessing when similarity in selection and arrangement becomes 'substantial,' and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case," the Court would "borrow from the standard Judge Learned Hand employed in a case involving fabric designs: The two photos' selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). In *Rentmeester*, the Ninth Circuit reasoned that even though an ordinary observer would look at two photos of Michael Jordan dunking a basketball in a similar but not identical pose, that same observer would note that the photos were unmistakably different. *Rentmeester*, 883 F.3d at 1123. The Court thinks that the same is true here. While observers would look at the unicorns and think "oh, unicorns," even a casual observer would not mistake the two for one another.

Even if there were certain copyrightable elements of Plaintiff's unicorn, the copyright would be "thin," meaning that it "protects against only virtually identical copying." *See Satava*, 323 at 812 (citing *Ets–Hokin v. Skyy Spirits, Inc.*, 323 F.3d at 766 (9th Cir. 2003)); *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 776-77 (9th Cir. 2018) (holding that a depiction of two dolphins crossing is not protectable because it can occur in nature and that "the other particularities of the scene depicted are not the same."). At the hearing, much of the discussion revolved around the monochromatic whiteness of the unicorns (specifically, their hooves), and the ringed gold horn. As the Court has already described, the Court sees important differences between the unicorns, and specifically these features of the creatures. *See* First Order at 6-9. While, the hooves on both unicorns are white, that is basically their only similarity.

7

Plaintiffs' hooves are clearly smaller and more similar to what you would see on a real-life horse. Defendants' hooves, meanwhile, are more like high-heeled or platform shoes. In no way are the hooves "virtually identical." Similarly, while the horns are both ringed and gold, the length of the horns, the angle that they protrude from the unicorn, and the "tightness" of the rings are all different. The Court would conclude that they are not substantially similar under the extrinsic test.

Finally, at the hearing, Plaintiffs emphasized that the similarity and originality of the unicorns should be assessed at a later stage in the proceedings. However, while "[i]t is true that dismissal of copyright infringement claims occurs more commonly at the summary judgment stage . . . dismissal at the pleading stage is by no means unprecedented." *Rentmeester*, 883 F.3d at 1123. Because the Court has the photos of the unicorns before it, "[t]his is not a case in which discovery could shed light on any issues that actually matter to the outcome." As such, the Court would dismiss Plaintiff's Copyright claim.

### C.  State Law Claims

As previewed in the First Order, the Court would not to retain jurisdiction over the remaining state law claims. *See* First Order at 11, n.3.

### IV.    Conclusion

For the foregoing reasons, the Court would **GRANT in part and DENY in part** Defendants' Motion. The Court would grant the Motion and dismiss the Copyright claim. Because the Court previously allowed Plaintiff to amend, and Plaintiff still could not allege a viable Copyright claim, the Court would dismiss that count **with prejudice**. The Court would decline to retain jurisdiction over the state law claims and would dismiss those **without prejudice** to the Plaintiff re-filing in state court.